June 3, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1775

WASHINGTON LEGAL FOUNDATION, ET AL.,

Plaintiffs, Appellants,

v.

MASSACHUSETTS BAR FOUNDATION, ET AL.,

Defendants, Appellees.

ERRATA SHEET

The opinion of this court issued on May 20, 1993, is amended

as follows:

Page 4, lines 5-6 from bottom: Delete 1987 after 11th Cir.
and add (1987) at end of citation: 484 U.S. 917 (1987).

Page 5, line 13: Abbreviate Indiana to Ind.
line 18: Change Assoc. to Ass'n
footnote 1, line 2: Abbreviate Arkansas to Ark.
line 3: Abbreviate Association to Ass'n
line 5: Delete 1984

Page 11, footnote 4, line 9: change and add as follows:
(1st Cir.), cert. denied, 494 U.S. 1082 (1990).

Page 17, line 8: Abbreviate Educational to Educ.
line 9: Abbreviate Foundation to Found.

Page 22, line 18: Delete (1979)

Page 24, line 3: Delete (1979)

Page 36, footnote 15, line 3: add after ...newspaper), cert.

denied, 113 S. Ct. 1067 (1993);

line 10: add after ...organizations), cert. denied, 493

U.S. 1094 (1990);
line 11: add after ...NJPIRG), cert. denied, 475 U.S.

1082 (1986);

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1775

WASHINGTON LEGAL FOUNDATION, ET AL.,

Plaintiffs, Appellants,

v.

MASSACHUSETTS BAR FOUNDATION, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Breyer, Chief Judge,

Bownes, Senior Circuit Judge,

and Boudin, Circuit Judge.

Richard A. Samp, with whom Daniel J. Popeo, John C. Scully, and

Francis C. Newton, Jr. were on brief, for appellants.

Allan van Gestel, with whom James C. Rehnquist, John C.

Kissinger, Jr., and Goodwin Procter & Hoar were on brief, for

Massachusetts Bar Foundation, William W. Porter, Assistant Attorney

General, and Scott Harshbarger, Attorney General, on brief for

Massachusetts IOLTA Committee, Donald K. Stern, S. Tara Miller, and

Hale and Dorr on brief for Boston Bar Foundation, Joseph L. Kociubes,

Stephanie A. Kelly, Diane E. Cooley, and Bingham, Dana & Gould on

brief for Massachusetts Legal Assistance Corporation, appellees.
William W. Porter, Assistant Attorney General, and Scott

Harshbarger, Attorney General, on brief for The Chair of the

Massachusetts Board of Bar Overseers, appellee.
William W. Porter, Assistant Attorney General, and Scott

Harshbarger, Attorney General, on brief for The Justices of the

Massachusetts Supreme Judicial Court, appellees.
Peter M. Siegel, Randall C. Berg, Jr., and Arthur J. England,

Jr., and Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A. on

brief for Alabama Law Foundation, Inc., Alabama State Bar, Arkansas
IOLTA Foundation, State Bar of Arizona, Arizona Bar Foundation, The

State Bar of California, The Legal Services Trust Fund Commission of
the State Bar of California, Colorado Bar Association, Colorado Lawyer
Trust Account Foundation, Connecticut Bar Foundation, Connecticut Bar
Association, Delaware Bar Foundation, Delaware State Bar Association,
The Florida Bar, The Florida Bar Foundation, Georgia Bar Foundation,
State Bar of Georgia, Hawaii Bar Foundation, Hawaii State Bar
Association, Idaho Law Foundation, Inc., Idaho State Bar, Illinois
State Bar Association, Lawyers Trust Fund of Illinois, The Iowa State
Bar Association, Kansas Bar Foundation, Kentucky IOLTA Fund, Louisiana
State Bar Association, Maine Bar Foundation, Maine State Bar
Association, Maryland Legal Services Corporation, Maryland State Bar
Association, Inc., State Bar of Michigan, Michigan State Bar
Foundation, Inc., Minnesota Lawyer Trust Account Board, The Missouri
Bar, Missouri Lawyer Trust Account Foundation, National Association of
IOLTA Programs, Inc., National Legal Aid & Defender Association
(NLADA), Nevada Law Foundation, New Hampshire Bar Association, New
Hampshire Bar Foundation, New Jersey State Bar Association, New Jersey
State Bar Foundation, The IOLTA Fund of the Bar of New Jersey, New
Mexico Bar Foundation, New York State Bar Association, Interest on
Lawyer Account Fund of the State of New York, North Carolina Bar
Association, North Carolina State Bar Plan for Interest on Lawyers'
Trust Accounts, State Bar Association of North Dakota, Ohio Legal
Services Program of the Ohio Public Defender Commission, Oklahoma Bar
Foundation, Inc., Oregon Law Foundation, Oregon State Bar,
Pennsylvania Bar Association, Lawyer Trust Account Board
[Pennsylvania], Philadelphia Bar Association, Rhode Island Bar
Foundation, Seattle-King County Bar Association, South Carolina Bar,
The South Carolina Bar Foundation, South Dakota Bar Foundation,
Tennessee Bar Association, Tennessee Bar Foundation, Texas Equal
Access to Justice Foundation, State Bar of Texas, Utah Bar Foundation,
Utah State Bar, Vermont Bar Association, Vermont Bar Foundation, The
Virginia Bar Association, Virginia Law Foundation, Virginia State Bar,
Washington State Bar Association, Legal Foundation of Washington, West
Virginia Bar Foundation, Inc., West Virginia State Bar, amici curiae.
J. Michael McWilliams, Dennis A. Kaufman, and John H. Morrison on

brief for The American Bar Association, amicus curiae.
Gerald B. Gallagher, on brief pro se, amicus curiae.

Kathleen McDonald O'Malley, Chief Counsel, Patrick A. Devine,

Assistant Attorney General, Lee Fisher, Attorney General of Ohio,

Winston Bryant, Attorney General of Arkansas, Richard Blumenthal,

Attorney General of Connecticut, Larry EchoHawk, Attorney General of

Idaho, Roland W. Burris Attorney General of Illinois, Bonnie J.

Campbell, Attorney General of Iowa, Michael E. Carpenter, Attorney

General of Maine, J. Joseph Curran, Jr., Attorney General of Maryland,

Hubert H. Humphrey, III, Attorney General of Minnesota, Mario J.

Palumbo, Attorney General of West Virginia, Mike Moore, Attorney

General of Mississippi, Frankie Sue Del Papa, Attorney General of

Nevada, Robert J. Del Tufo, Attorney General of New Jersey, Tom Udall,

Attorney General of New Mexico, Nicholas J. Spaeth, Attorney General

of North Dakota, Earnest D. Preate, Jr., Attorney General of

Pennsylvania, Dan Morales, Attorney General of Texas, Jeffrey L.

Amestoy, Attorney General of Vermont, Robert Abrams, Attorney General

of New York, Charles W. Burson, Attorney General of Tennessee, Ken

Eikenberry, Attorney General of Washington, and Mary Sue Terry,

Attorney General of Virginia, on brief for the States of Ohio,
Arkansas, Connecticut, Idaho, Illinois, Iowa, Maine, Maryland,
Minnesota, Mississippi, Nevada, New Jersey, New Mexico, New York,
North Dakota, Pennsylvania, Tennessee, Texas, Vermont, Washington,
West Virginia, and Virginia, amici curiae.

May 20, 1993

BOWNES, Senior Circuit Judge. This appeal involves
BOWNES, Senior Circuit Judge

a challenge to the Massachusetts Interest on Lawyers' Trust

Accounts ("IOLTA") program. The district court granted the

defendants' motion to dismiss the plaintiffs' claims that the

IOLTA program violated their First Amendment rights of

freedom of speech and association, and effected a taking of

their property in violation of the Fifth and Fourteenth

Amendments. We affirm.

I.
BACKGROUND

Traditionally, in Massachusetts and in other

states, clients' funds which lawyers held for a short term or

in nominal amounts were deposited into non-interest bearing

pooled trust accounts. See, e.g., In Re Mass. Bar Ass'n, 478

N.E.2d 715, 716 (Mass. 1985); In Re Minn. State Bar Ass'n,

332 N.W.2d 151, 155-56 (Minn. 1982). Banking laws and the

ethical obligation of lawyers to maintain clients' funds so

that they were immediately available for reimbursement

prevented such pooled trust accounts from accruing interest.

Cone v. State Bar of Fla., 819 F.2d 1002, 1005 (11th Cir.),

cert. denied, 484 U.S. 917 (1987). Interest earned by pooled

trust accounts remained with the banking institution which

held the funds. Id. With the advent of Negotiable Order of

Withdrawal ("NOW") accounts authorized by the Consumer

Checking Account Equity Act, interest became available on

-4-

checking accounts for eligible depositors. Id. at 1005-06.

Eligible depositors include individual owners of deposited

funds and certain charitable, non-profit or public interest

entities including IOLTA programs. See id.; In Re N. H. Bar

Ass'n, 453 A.2d 1258, 1259 (N.H. 1982). During the late

1970's and through the 1980's, Florida and many other states

proposed IOLTA programs and courts upheld the programs

finding them constitutionally and ethically permissible.1

As of January, 1992, forty-nine states and the District of

Columbia had authorized IOLTA programs. ABA/BNA Lawyers'

Manual on Professional Conduct 45:202 (1992). Indiana

remains the only state which has not adopted an IOLTA

program. Id.; In Re Public Law No. 154-1990, 561 N.E.2d 791

(Ind. 1990); In Re Ind. State Bar, 550 N.E.2d 311 (Ind.

1990).

The Massachusetts IOLTA program was established by

amendment to Canon 9, DR 9-102 of Rule 3:07 of the Rules of

the Supreme Judicial Court, effective September 1, 1985, the

"IOLTA Rule." Mass. Bar Ass'n, 478 N.E.2d at 720-21. From

1985 until 1990, the IOLTA program operated as a voluntary

1 See, e.g., Cone, 819 F.2d 1002; In Re Interest on Trust

Accounts, 402 So.2d 389 (Fla. 1981); In Re Ark. Bar Ass'n,

738 S.W.2d 803 (Ark. 1987); Mass. Bar Ass'n, 478 N.E.2d 715;

Carroll v. State Bar of California, 213 Cal. Rptr. 305 (4th

Dist.), cert. denied sub nom. Chapman v. State Bar of Calif.,

474 U.S. 848 (1985); In Re Interest on Lawyers' Trust

Accounts, 672 P.2d 406 (Utah 1983); N. H. Bar Ass'n, 453 A.2d

1258; Minn. State Bar Ass'n, 332 N.W.2d 151.

-5-

system. Attorneys could elect to participate by establishing

an interest-bearing IOLTA account and by complying with DR 9-

102(C) requirements which included choosing a recipient

charity from a group designated by the IOLTA Committee.

In 1989, the Massachusetts Supreme Judicial Court

("SJC") converted the voluntary IOLTA program into a

mandatory program by amending the IOLTA Rule, effective

January 1, 1990. As amended, the rule required all

Massachusetts lawyers to deposit client funds into interest

bearing accounts: either (1) a pooled IOLTA account if, in

the judgment of the lawyer, the deposits were nominal in

amount or to be held for only a short period of time; or (2)

individual accounts for all other client funds. The Rule

required lawyers or law firms to direct the banks holding

their IOLTA accounts to disburse accrued interest to a

charitable entity selected by the lawyer or firm from a group

designated by the SJC. The designated charities were

Massachusetts Legal Assistance, the Massachusetts Bar

Foundation, and the Boston Bar Foundation.

The SJC again amended the IOLTA Rule, effective

January 1, 1993, to change the process for disbursement of

IOLTA funds.2 The IOLTA Rule now vests responsibility for

2 The Massachusetts Supreme Judicial Court amended Rule
3:07, DR 9-102(C) by Order 92-18, effective January 1, 1993.
A copy of DR 9-102 and the amendment appear in the appendix
following this opinion.

-6-

disbursement of IOLTA funds in the IOLTA Committee and

eliminates choice by lawyers of recipient eligible charities.

The IOLTA Committee must disburse sixty-seven percent of all

IOLTA funds to Massachusetts Legal Assistance and the

remaining thirty-three percent to "other designated

charitable entities."

The parties have not briefed or argued any issues

in the context of the 1993 amendment to the IOLTA Rule.3

Although the amendment of the IOLTA Rule affects the process

of funds disbursement, the changes are not material to this

decision. None of the parties argued that the lawyers'

choice of recipient charities, as provided by the 1990

version of the IOLTA Rule, was significant. The funds are

still disbursed primarily to Massachusetts Legal Assistance

with the remainder to "other designated eligible charities"

which are still the Massachusetts Bar Foundation and the

Boston Bar Foundation. In addition, the mission of IOLTA

funds remains the same: "The Massachusetts Legal Assistance

Corporation may use IOLTA funds to further its corporate

purpose and other designated charitable entitles [sic] may

use IOLTA funds either for (1) improving the administration

of justice or (2) delivering civil legal services to those

who cannot afford them." Mass. Sup. J. C. R. 3:07, DR 9-

3 The Massachusetts Attorney General's Office sent this
court a copy of the amendment to DR 9-102(C) by letter dated
February 12, 1993.

-7-

102(C), as amended by Order 92-18, effective Jan. 1, 1993.

The corporate purpose of the Massachusetts Legal Assistance

Corporation is to

provid[e] financial support for legal
assistance programs that provide
representation to persons financially
unable to afford such assistance in
proceedings or matters other than
criminal proceedings or matters, except
those proceedings or matters in which the
commonwealth is required to provide
representation.

Mass. Gen. L. ch. 221A, 2 (West Supp. 1992).

Unless further designation is necessary for

clarity, we will refer to the currently effective

Massachusetts Supreme Judicial Court Rule 3:07, DR 9-102(C)

as "DR 9-102(C)" or the "IOLTA Rule."

A. The Plaintiffs' Claims

There are five plaintiffs in this action. The

Washington Legal Foundation ("WLF") is a non-profit, public

interest law and policy center operating in Washington, D.C.

Karen Parker is a citizen of Massachusetts who has employed

lawyers in connection with her real estate business and other

businesses, which has resulted in her money being deposited

in IOLTA accounts. Stephanie Davis is a citizen of

Massachusetts who has not had her money placed in IOLTA

accounts, but she anticipates that, in the future, she may

need to hire an attorney which would cause her money to be

deposited in an IOLTA account. William R. Tuttle is an

-8-

attorney practicing in Abington, Massachusetts, without an

IOLTA account. Timothy J. Howes is an attorney in

Springfield, Massachusetts, where he maintains an IOLTA

account in the Shawmut Bank. Howes is suing on behalf of

himself and on behalf of his clients whose funds are

deposited in his IOLTA account.

The defendants are the Massachusetts Bar

Foundation, the Boston Bar Foundation, the Massachusetts

Legal Assistance Corporation, Katherine S. McHugh (in her

capacity as chair of the Massachusetts IOLTA Committee), Fran

F. Burns (in his capacity as chair of the Board of Bar

Overseers), and the Justices of the Supreme Judicial Court of

Massachusetts. The plaintiffs allege, pursuant to 42 U.S.C.

1983, that they have been deprived, under color of state

law, of their rights secured by the First, Fifth and

Fourteenth Amendments of the Constitution by operation of the

Massachusetts IOLTA program. 1. Count One: First and

Fourteenth Amendments

WLF alleges that it sent a check to cover costs and

expenses related to this legal action to a Massachusetts

attorney (not a party to the action) who deposited the check

in his IOLTA account as required by the IOLTA Rule. Parker

alleges that she has and will continue to use lawyers in

connection with her real estate business and that her funds

-9-

deposited with lawyers have and will be deposited in IOLTA

accounts. WLF and Parker allege that:

The collection of and use of interest,
under color of state law, generated from
the IOLTA trust account of [their
attorneys] for litigation, especially for
litigation that involves political or
ideological causes, and for legislative
or other forms of lobbying, deprive
[them] of their rights to freedom of
speech and association guaranteed by the
First and Fourteenth Amendments to the
U.S. Constitution.

Davis alleges that although she has not yet had

money deposited in an IOLTA, the IOLTA Rule creates "the risk

that she will be forced to choose between employing an

attorney or financially supporting organizations with which

she disagrees." Davis alleges her constitutional claims in

substantially similar terms to those quoted above. Attorney

Howes alleges that he has had to deposit client funds in his

IOLTA as required by the IOLTA Rule and that the Rule "forces

[him] to choose between not practicing law and or [sic]

practicing law and associating with organizations whose

actions offend his political and ideological beliefs and

thereby depriving him of his right to freedom of speech and

association as guaranteed by the First and Fourteenth

Amendments to the U.S. Constitution." Finally, Attorney

Tuttle alleges that the IOLTA Rule has forced him "to forego,

to his professional and financial detriment, depositing

certain client funds into non-interest bearing accounts in

-10-

order to avoid associating with organizations whose actions

offend his political and ideological beliefs" thereby

depriving him of the same constitutional rights as alleged by

Attorney Howes.

In summary, Count I alleges violation of the

plaintiffs' rights of freedom of speech and association.

-11-

2. Count Two: Fifth and Fourteenth Amendments

Plaintiffs WLF and Parker allege that the IOLTA

Rule constitutes an illegal taking of the beneficial use of

their funds for public use without just compensation and

without due process of law in violation of the Fifth and

Fourteenth Amendments to the Constitution.4 Howes makes the

same claim on behalf of his clients whose funds he has

deposited into his IOLTA account. Neither Davis, Howes (on

his own behalf) nor Tuttle make claims under Count II.

3. Relief Requested

The plaintiffs ask for declaratory and injunctive

relief to dismantle the operation of the mandatory IOLTA

program. Specifically, the plaintiffs request that the

court: (1) require the defendants to refund the interest

which has been earned on their funds while in IOLTA accounts;

(2) declare the IOLTA Rule void as an unconstitutional

violation of the plaintiffs' First, Fifth and Fourteenth

4 The plaintiffs have not pursued their claims alleged in
Count III based on the Fourteenth Amendment that the IOLTA
program has unconstitutionally deprived them of their
property without due process of law. The plaintiffs'
statement of issues on appeal is limited to the
constitutional rights of the plaintiffs under the First and
Fifth Amendments. Therefore, we assume that the plaintiffs'
claims under the Fourteenth Amendment have been abandoned and
are waived. United States v. Zannino, 895 F.2d 1, 17 (1st

Cir.) cert. denied, 494 U.S. 1082 (1990). Of course, the

Fourteenth Amendment is properly included in each count as
the basis upon which the First and Fifth Amendment
prohibitions apply to the states.

-12-

Amendment rights; (3) issue permanent injunctions prohibiting

the defendants from requiring attorneys to comply with the

IOLTA Rule and from disciplining attorneys for failure to

comply with the IOLTA Rule; (4) issue a permanent injunction

directing the SJC to require attorneys to make full

disclosure to their clients of uses of IOLTA funds if the

attorney elects to participate in IOLTA, and (5) grant

reasonable attorneys fees to the plaintiffs pursuant to 42

U.S.C. 1988.

B. Dismissal of Claims

The defendants moved to dismiss the plaintiffs'

action on the grounds that their constitutional claims lacked

merit and that some of the plaintiffs lacked standing.5 The

district court found that there was no serious dispute that

at least two of the plaintiffs, Parker and Howes, had

standing to bring their constitutional claims. The district

court dismissed the plaintiffs' claims holding "that the

plaintiffs have no property interest in the funds subject to

5 On appeal, the record includes only the defendants' bare
motion to dismiss which states the grounds as lack of subject
matter jurisdiction and failure to state a claim upon which
relief may be granted. The district court summarized the
defendants' grounds for the motion to dismiss: "In addition
to arguing that the plaintiffs' constitutional challenges are
without merit, the defendants contend that two plaintiffs
lack standing." Washington Legal Found., 795 F. Supp. at 52,

n.3. We assume, therefore, that the defendants' assertion of
lack of subject matter jurisdiction referred to lack of
standing.

-13-

the SJC Rule," and that the SJC Rule did not compel

association with speech and "speech, in the constitutional

sense, is not a factor of the challenged SJC Rule."

Washington Legal Found., 795 F. Supp. 50, 53, 56 (D. Mass.

1992). The plaintiffs appeal the district court's dismissal

of their claims.

C. Standard of Review

Our standard of review of a dismissal pursuant to

Fed. R. Civ. P. 12(b)(6) is well established. We begin by

accepting all well-pleaded facts as true, and we draw all

reasonable inferences in favor of the appellants. Coyne v.

City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992).

Because a dismissal terminates an action at the earliest

stages of litigation without a developed factual basis for

decision, we must carefully balance the rule of simplified

civil pleading against our need for more than conclusory

allegations. Dewey v. University of New Hampshire, 694 F.2d

1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944 (1983).

Because only well-pleaded facts are taken as true, we will

not accept a complainant's unsupported conclusions or

interpretations of law. United States v. AVX Corp., 962 F.2d

108, 115 (1st Cir. 1992) ("a reviewing court is obliged

neither to 'credit bald assertions, periphrastic

circumlocutions, unsubstantiated conclusions, or outright

vituperation,'... nor to honor subjective characterizations,

-14-

optimistic predictions, or problematic suppositions."

(citations omitted)). We may affirm the district court's

order on any independently sufficient grounds. Willhauck v.

Halpin, 953 F.2d 689, 704 (1st Cir. 1991).

D. Standing

The issue of standing has not been raised by the

parties on appeal, and therefore we address standing only

because it presents a threshold jurisdictional question.

Bender v. Williamsport Area School Dist., 475 U.S. 534, 541

(1986) ("every federal appellate court has a special

obligation to 'satisfy itself not only of its own

jurisdiction, but also that of the lower courts in a cause

under review,' even though the parties are prepared to

concede it." (citations omitted)); Warth v. Seldin, 422 U.S.

490, 498 (1975) ("[Standing] is the threshold question in

every federal case, determining the power of the court to

entertain the suit."). Standing requirements are most

strictly enforced in cases involving constitutional

questions. Bender, 475 U.S. at 541-42.

The standing doctrine is derived from Article III

of the Constitution which requires the existence of a "case

or controversy" before a claim may be resolved by judicial

process. Allen v. Wright, 468 U.S. 737, 750 (1984). To show

a case or controversy, a plaintiff must first "clearly

-15-

demonstrate that he has suffered an 'injury in fact[]'" which

means "an injury to himself that is 'distinct and

palpable,'... as opposed to merely '[a]bstract,' ... and the

alleged harm must be actual or imminent, not 'conjectural' or

hypothetical.'" Whitmore v. Arkansas, 495 U.S. 149, 155

(1990) (citations omitted). Second, the claimant must allege

facts which show "that the injury 'fairly can be traced to

the challenged action' and, third, 'is likely to be redressed

by a favorable decision.'" Id. (quoting Simon v. Eastern

Kentucky Welfare Rights Organization, 426 U.S. 26, 38, 41

(1976) and Valley Forge Christian College v. Americans United

for Separation of Church and State, Inc., 454 U.S. 464, 472

(1982); see also Rumford Pharmacy v. City of East Providence,

970 F.2d 996, 1001 (1st Cir. 1992); AVX Corp., 962 F.2d at

113. Our standing inquiry depends on whether the plaintiffs

have established the existence of a case or controversy as to

each of their claims, but does not involve the merits of

particular claims. Warth, 422 U.S. at 500.

The district court found that at least Howes and

Parker had standing to bring the constitutional challenges in

this case. Karen Parker alleges that she has and will

continue to employ lawyers for transactions related to her

business and that she has and will have her funds placed in

IOLTA accounts by the lawyers she employs. She claims that

the IOLTA program collects and uses for political and

-16-

ideological causes interest generated by her funds placed in

IOLTA accounts, and therefore the operation of the IOLTA

program deprives her of freedom of speech and association in

violation of the First Amendment. Parker also claims that

the IOLTA program constitutes an illegal taking of the

beneficial use of her funds deposited in IOLTA accounts in

violation of the Fifth Amendment. She asks this court to

declare the IOLTA Rule unconstitutional and to enjoin the

operation of the rule. Based upon her allegations, which we

take as true for this purpose, she has stated an actual

injury to herself which is traceable to the IOLTA rule and

which may be remedied by the relief sought. We agree with

the district court that Parker has standing to maintain her

claims made in this action.

Howes presents a more complex standing situation.

Howes brings the First Amendment claim on his own behalf and

on behalf of his clients, and the Fifth Amendment claim only

on behalf of his clients.6 As to the First Amendment claim

6 Howes' standing on behalf of third parties is more
difficult. The general rule is that a plaintiff has standing
to assert only his own rights, not those of third parties.
Playboy Enterprises, Inc. v. Public Service Comm'n, 906 F.2d

25, 36-37 (1st Cir.), cert. denied, sub nom. Rivera Cruz v.

Playboy Enterprises, Inc., 498 U.S. 959 (1990). An exception

to the rule against jus tertii standing exists if other

considerations, such as the representative's relationship
with the third party and the opportunity of the third party
to assert its own rights, overcome prudential concerns. Id.

at 37. We do not address the third party standing issue,
however, because it is unnecessary for our limited purpose of
determining jurisdiction.

-17-

on his own behalf, Howes alleges that he has been compelled

by the IOLTA Rule to participate in the IOLTA program and

thereby to associate with IOLTA funded organizations which

offend his political and ideological beliefs. Howes also

alleges that the operation of the IOLTA Rule forces him to

choose between practicing law and not practicing law. He

asks for the same relief requested by Parker. Without

addressing the merits of Howes' personal claims, we find that

he has alleged an injury which may be remedied by the

requested relief which is sufficient to establish his

standing to maintain his First Amendment claim.

Because we find that at least two of the

plaintiffs, Parker, a client, and Howes, a lawyer, have

standing to maintain each claim, we need not address the

standing of all plaintiffs as to each claim. Watt v. Energy

Action Educ. Found., 454 U.S. 151, 160 (1981); Buckley v.

Valeo, 424 U.S. 1, 12 (1976) (finding appellants had standing

because "at least some of the appellants have a sufficient

'personal stake' in a determination of the constitutional

validity of each of the challenged provisions to present 'a

real and substantial controversy admitting of specific relief

through a decree of a conclusive character'" (citation and

footnote omitted)). We find, therefore, that based on

Parker's and Howes' standing, we have jurisdiction in this

case.

-18-

II.
ANALYSIS

The plaintiffs7 allege that the Massachusetts

IOLTA program violates their First Amendment rights by

collecting the interest generated by clients' funds which are

deposited in IOLTA accounts and distributing the money to

designated organizations. The plaintiffs further allege that

the recipient organizations use the money for litigation

involving political or ideological causes and for lobbying.

The IOLTA program, the plaintiffs allege, therefore compels

them to support political and ideological causes depriving

them of freedom of speech and association. The plaintiffs

also allege that the IOLTA program's appropriation of

interest from lawyers' trust accounts takes the beneficial

use of client funds which constitutes an unconstitutional

taking in violation of the Fifth and Fourteenth Amendments.8

A. The Fifth Amendment Taking Claim

7 As noted above, all of the plaintiffs do not join in all
counts of the complaint. In addition, we have not resolved
the standing of all plaintiffs. "Plaintiffs" as used
throughout this opinion will refer to the particular
plaintiffs making the claims discussed without resolving
standing.

8 We address the plaintiffs' Fifth Amendment claim first,
although it is raised in Count II of the plaintiffs'
complaint, in order to resolve the plaintiffs' property
rights to funds deposited in IOLTA accounts before discussing
the First Amendment claim which also involves that issue.

-19-

The Fifth Amendment provides that "private property

[shall not] be taken for public use, without just

compensation." There is no dispute that clients' money or

property held by lawyers belongs to the clients and must be

returned to the clients at their request. Mass. S. J. C.

Rule 3:07, Cannon 9, DR 9-102(B)(4); Mass. Gen. L. Ann. ch.

221, 51 (1986). Many courts, including the Supreme

Judicial Court of Massachusetts, have held that clients do

not have a constitutionally protected property right to the

interest earned on IOLTA accounts.9 Mass. Bar Ass'n, 478

N.E.2d at 718; see also Cone, 819 F.2d at 1007; Carroll, 213

Cal. Rptr. at 312; Minn. State Bar Ass'n, 332 N.W.2d at 158;

N. H. Bar Ass'n, 453 A.2d at 1260-61. Perhaps in response,

the plaintiffs have eschewed a right to the interest itself,

and instead claim a property right to the beneficial use of

their deposited funds, and more specifically, the right to

control and to exclude others from the beneficial use of

those funds.

To make a cognizable claim of a taking in violation

of the Fifth Amendment, the plaintiffs must first show that

they possess a recognized property interest which may be

protected by the Fifth Amendment. Penn Cent. Transp. Co. v.

9 We accept as true, as do all of the parties, the
assumption that there are no feasible accounting procedures
which would allow individual client funds deposited into
pooled accounts to earn net interest.

-20-

New York City, 438 U.S. 104, 124-25 (1978). The plaintiffs

must point to credible sources for their claimed property

interest:

Property interests, of course, are not
created by the Constitution. Rather,
they are created and their dimensions are
defined by existing rules or
understandings that stem from an
independent source such as state
law rules or understandings that secure
certain benefits and that support claims
of entitlement to those benefits.

Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

Intangible property rights, "'the group of rights inhering in

the citizen's relation to the physical thing, as the right to

possess, use and dispose of it[,]'" which are recognized by

state law are protected by the Takings Clause. Ruckelshaus

v. Monsanto Co., 467 U.S. 986, 1003 (1984) (quoting United

States v. General Motors Corp., 323 U.S. 373, 377-78 (1945));

see also Bowen v. Gilliard, 483 U.S. 587, 603-09 (1987)

(finding no unconstitutional taking of child's right to have

support payments used for child's best interest by an

amendment to the AFDC statute). Not all asserted property

interests are constitutionally protected, however, as "a mere

unilateral expectation or an abstract need is not a property

interest entitled to protection." Webb's Fabulous

Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980).

1. Beneficial Use of Deposited Funds

-21-

The plaintiffs rely on trust law to establish their

right to control the beneficial use of their funds as a

protected property interest. IOLTA deposits do not require a

trust agreement and the plaintiffs have not argued that

formal trust agreements exist. Rather, the plaintiffs

contend that because the acronym "IOLTA" includes the word

"trust," a trust relationship is created between lawyer and

client when client funds are deposited into IOLTA accounts.

The relationship between lawyer and client in Massachusetts

is fiduciary as a matter of law. Markell v. Sidney B.

Pfeifer Found., Inc., 402 N.E.2d 76, 94 (Mass. App. 1980).

The lawyer-client relationship presumes that the client

trusts the lawyer to handle the client's funds appropriately

and the lawyer assumes the fiduciary obligation subject to

the regulation of the profession. We are not convinced that

the deposit of clients' funds into IOLTA accounts transforms

a lawyer's fiduciary obligation to clients into a formal

trust with the reserved right by the client to control the

beneficial use of the funds as claimed by the plaintiffs.

The plaintiffs also claim that they have a

protected property right to exclude others from the

beneficial use of their funds while they are deposited in

IOLTA accounts. In support of the right to exclude, the

plaintiffs rely on cases which have established that property

owners have a right to exclude others from their real

-22-

property. See, e.g., Kaiser Aetna v. United States, 444

U.S. 164, 176; Loretto v. Teleprompter Manhattan CATV Corp.,

458 U.S. 419, 435-36 (1982). The plaintiffs have cited no

sources which recognize a similar constitutionally protected

property right to control or exclude others from intangible

property and we have found none.10

2. IOLTA Program Does Not Cause a Taking

Assuming arguendo that the plaintiffs could

establish their claimed property interests in the beneficial

use of their funds subject to the IOLTA Rule, the IOLTA

program does not cause an illegal taking of those interests.

The analysis of Fifth Amendment takings claims has evolved

through a series of cases in which Supreme Court decisions

"engaging in ... essentially ad hoc, factual inquiries ...

have identified several factors that have particular

significance." Penn Central, 438 U.S. at 124. The Court has

repeatedly used the significant factors enunciated in Penn

Central to analyze takings claims: "(1) 'the economic impact

of the regulation on the claimant'; (2) 'the extent to which

10 The plaintiff has not discussed, and we do not find
analogous, intangible property rights which, by their nature
or by agreement, require the exclusion of others to preserve
the property interest. See, e.g., Monsanto, Co., 467 U.S. at

1002 ("Because of the intangible nature of a trade secret,
the extent of the property right therein is defined by the
extent to which the owner of the secret protects his interest
from disclosure to others.").

-23-

the regulation has interfered with distinct investment-backed

expectations'; and (3) 'the character of the governmental

action.'" Connolly v. Pension Benefit Guaranty Corp., 475

U.S. 211, 225 (1986) (citation omitted); see also Hodel v.

Irving, 481 U.S. 704, 714-15 (1987); Kaiser, 444 U.S. at 175.

The government may impose regulations to adjust rights and

economic interests among people for the public good, as long

as the government does not force "some people alone to bear

public burdens which, in all fairness and justice, should be

borne by the public as a whole." Armstrong v. United States,

364 U.S. 40, 49 (1960); see also Andrus v. Allard, 444 U.S.

51, 65 (1979).

a. Character of governmental action.

The plaintiffs claim that the character of

governmental action, through the IOLTA Rule, is a physical

invasion of their beneficial interests in their funds held in

IOLTA accounts. The physical invasion occurs, the plaintiffs

argue, because the IOLTA program borrows the principal to

generate income by collecting the interest earned on IOLTA

accounts. The plaintiffs do not claim that they have any

rights to the interest, rather they assert the right to

control who uses and benefits from the principal which

generates the interest. The IOLTA program, the plaintiffs

-24-

claim, "involves a permanent physical invasion of the funds"

while they are held in IOLTA accounts.

The Supreme Court has recognized that a taking is

more obvious when the governmental action can be

characterized as a physical invasion. Penn Central, 438 U.S.

at 124. The Court has identified particular governmental

action as categorical or per se takings which generally

occur: (1) when government action compels property owners to

acquiesce in permanent physical invasion or occupation of

their private property, and (2) when "regulation denies all

economically beneficial or productive use of land." Lucas

v. South Carolina Coastal Council, 112 S. Ct. 2886, 2893

(1992); see also Yee v. City of Escondido, Cal., 112 S. Ct.

1522, 1526 (1992).

The plaintiffs argue that the IOLTA program causes

a physical taking similar to the takings found in Kaiser, 444

U.S. 164 (1979); Loretto, 458 U.S. 419; and Webb's, 449 U.S.

155. In Kaiser, owners of a private marina, who had

connected their private pond to the Pacific Ocean, challenged

the federal government's imposition of a navigational

servitude on their property requiring that they allow a right

of access to the public. The Court found that the

government's regulation of the marina amounted to a physical

invasion of their private property by the public, and was,

therefore, an unconstitutional taking of the marina owners'

-25-

right to exclude others from their private property. Kaiser,

444 U.S. at 180.

In Loretto, 458 U.S. 419, government regulation

required private property owners to allow conduits for cable

television to be attached to their buildings even when the

property owners did not subscribe to cable television. The

Court found that the regulation authorized a physical

occupation, however small, of the plaintiff's private

property which was unconstitutional without compensation.

We find no logical analogy between the physical

invasion of real property, as in Kaiser and Loretto, and the

operation of the IOLTA Rule. The plaintiffs' takings claim

involves intangible property rights not real property. To

bolster their claim of physical invasion, the plaintiffs

contend that their property rights are nearly identical to

the claimants' property rights in Webb's, 449 U.S. 155, in

which the Court stated "the [government's] appropriation of

the beneficial use of the fund is analogous to the

appropriation of the use of private property." Id. at 163-

64.

In Webb's, 449 U.S. 155, the Supreme Court struck

down, as an unconstitutional violation of the Fifth Amendment

Takings Clause, a Florida statute which required county

clerks to deposit interpleaded funds in interest bearing

accounts and retain the accrued interest. Another Florida

-26-

statute provided for a separate fee to be paid to the county

registry for holding interpleaded funds. The Court first

determined that claimants of the interpleaded funds had a

property right to the deposited funds. Webb's, 449 U.S. at

161-62. Applying the general rule that interest follows the

principal, the Court held that the claimants had a property

right to the interest accrued on the interpleaded funds. Id.

The Court concluded that there was not sufficient

justification for the county to take the interest on

interpleaded funds, which was the private property of the

claimants, when the county registries were receiving fees for

the costs related to holding the interpleaded funds. Id. at

164-65.

Despite the some superficial similarities between

Webb's and this case, there is a fundamental difference. In

Webb's, the Court found that the claimants to the

interpleaded fund had a recognized property right to the

interest earned while the funds were held by the county

registries. In this case, the plaintiffs do not have a

property right to the interest earned on their funds held in

IOLTA accounts. See Cone, 819 F.2d at 1006-07 (holding that

plaintiffs had no right to interest earned on IOLTA accounts

and discussing implications of Webb's). In fact, the

plaintiffs recognize this and claim only the intangible

rights related to the beneficial use of deposited funds: the

-27-

right to control and exclude others. The property rights of

the plaintiffs here and the claimants in Webb's, therefore,

are different. The Webb's claimants had property rights to

accrued interest which is tangible personal property, while

plaintiffs in this case have claimed only intangible property

interests.

The IOLTA program does not occupy or invade the

plaintiffs' property even temporarily: the IOLTA program

leaves the deposited funds untouched, the funds are always

available to clients as required by DR 9-102(B)(4), and the

interest earned on IOLTA accounts is not the plaintiffs'

property. The property rights claimed by the plaintiffs are

intangible. We find no logical or legal support for the

plaintiffs' claim that the IOLTA program has caused a

physical invasion and occupation of their intangible property

rights. b. Economic interference.

Governmental action through regulation of the use

of private property does not cause a taking unless the

interference is significant. Andrus, 444 U.S. at 66-67.

Having found no weight to the plaintiffs' argument that

governmental action through the IOLTA Rule has effected a

physical invasion of their property rights, we consider the

economic factors which are significant to a takings claim the

economic impact of the IOLTA Rule on the plaintiffs, and

"'the extent to which the regulation has interfered with

-28-

distinct investment-backed expectations.'" Connolly, 475

U.S. at 225 (citations omitted).

The property rights claimed by the plaintiffs do

not involve clients' economic interests. The claimed right

to control and to exclude others from the beneficial use of

funds held by lawyers has no economic benefit for the

plaintiffs because clients would not otherwise be entitled to

the interest earned on pooled accounts. Plaintiffs do not

claim and there are no "investment-backed" expectations in

the claimed rights of clients to control and exclude others

from the beneficial use of deposited funds under these

circumstances.

In sum, the plaintiffs claim, at best, a thin

strand in the commonly recognized bundle of property rights.

Under the IOLTA Rule, the plaintiffs retain the right to

possess, use and dispose of the principal sum deposited in

IOLTA accounts. "At least where an owner possesses a full

'bundle' of property rights, the destruction of one 'strand'

of the bundle is not a taking, because the aggregate must be

viewed in its entirety." Andrus, 444 U.S. at 65-66.

Weighing the plaintiffs' claimed property rights against the

bundle of rights remaining in their deposited funds left

untouched by the IOLTA program, we find that the IOLTA Rule

has not caused a taking of plaintiff's property.

-29-

Consequently, we need not weigh any burden caused by taking

private rights against the public benefit.

We affirm, albeit on different grounds, the

district court's dismissal of Count Two of the plaintiffs'

complaint.

B. The First Amendment Speech and Association Claim

The plaintiffs claim that the IOLTA Rule compels

lawyers, and therefore clients, to participate in the IOLTA

program and thereby support lobbying and litigation for

ideological and political causes. They contend that the

IOLTA Rule violates their First Amendment rights of freedom

of speech and association. The district court dismissed the

plaintiffs' First Amendment claims on the grounds that (1)

the IOLTA Rule did not compel the plaintiffs' participation

in the IOLTA program, and (2) the IOLTA Rule did not involve

constitutionally protected speech. We agree that the

plaintiffs' First Amendment claim was properly dismissed.

The First Amendment protects the right not to speak

or associate, as well as the right to speak and associate

freely.11 Roberts v. United States Jaycees, 468 U.S. 609,

11 The First Amendment provides:
Congress shall make no law respecting
an establishment of religion, or
prohibiting the free exercise thereof; or
abridging the freedom of speech, or of
the press; or the right of the people
peaceably to assemble, and to petition
the Government for a redress of

-30-

623 (1984); Wooley v. Maynard, 430 U.S. 705, 714 (1977); West

Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 633 (1943).

The Supreme Court has established that "[t]he right to speak

and the right to refrain from speaking are complementary

components of the broader concept of 'individual freedom of

mind.'" Wooley, 430 U.S. at 714 (quoting Barnette, 319 U.S.

at 637).

The most obvious infringement on First Amendment

rights in the context of compelled speech occurs when

individuals are forced to make a direct affirmation of

belief. See, e.g., Barnette, 319 U.S. at 633 ("the

compulsory flag salute and pledge requires affirmation of a

belief and an attitude of mind"); Wooley, 430 U.S. at 715

("New Hampshire's statute in effect requires that appellees

use their private property as a 'mobile billboard' for the

State's ideological message"); Pacific Gas & Elec. Co. v.

Public Util. Comm'n, 475 U.S. 1, 17-18 (1986) ("the

[California Public Utilities] Commission's order requires

[Pacific Gas Company] to use its property the billing

envelopes to distribute the message of another."). The IOLTA

Rule does not compel the plaintiffs to display, affirm or

distribute ideologies or expression allegedly advocated by

grievances.

-31-

the IOLTA program or its recipient organizations. Direct

compelled speech, therefore, is not an issue in this case.

Compelled support of an organization engaging in

expressive activities may also burden First Amendment rights.

In a series of cases, the Supreme Court has examined the

First Amendment implications raised by compelled financial

support of unions and bar associations which engage in

political or ideological activities. See, e.g., Keller v.

State Bar of Cal., 496 U.S. 1 (1990); Lehnert v. Ferris

Faculty Ass'n, 111 S. Ct. 1950 (1991); Chicago Teachers

Union, Local No. 1, AFT, AFL-CIO v. Hudson, 475 U.S. 292

(1986); Ellis v. Railway Clerks, 466 U.S. 435 (1984); Abood

v. Detroit Board of Educ., 431 U.S. 209 (1977); Railway

Clerks v. Allen, 373 U.S. 113 (1963); Machinists v. Street,

367 U.S. 740 (1961); Lathrop v. Donohue, 367 U.S. 820

(1961); Railway Employees Dept. v. Hanson, 351 U.S. 225

(1956). The Court found that compelled financial support of

these organizations implicates First Amendment rights when

the funds were used to subsidize ideological or political

activities.

In our analysis of the plaintiffs' First Amendment

claims, we must first determine whether the IOLTA Rule

burdens protected speech by forcing expression through

compelled support of organizations espousing ideologies or

engaging in political activities. If so, we will then

-32-

strictly scrutinize the IOLTA program to determine whether

the IOLTA Rule serves compelling state interests through

means which are narrowly tailored and germane to the state

interests. See Austin v. Mich. Chamber of Commerce, 110 S.

Ct. 1391, 1396 (1990); Pacific Gas & Elec. Co., 475 U.S. at

19; Abood, 431 U.S. at 235.

1. Is the IOLTA Rule Compulsory?

The district court concluded that the IOLTA Rule

was not compulsory because lawyers could avoid establishing

IOLTA accounts by choosing not to hold client funds or by

establishing individual client accounts. Washington Legal

Found., 795 F. Supp. at 55. On appeal, the plaintiffs argue

that the district court erred in not finding the IOLTA Rule

compulsory as to them. Interpretation of a state

disciplinary rule of professional conduct is a question of

law which we review under the de novo standard. In Re

Dresser Indus., Inc., 972 F.2d 540, 543 (5th Cir. 1992); see

also Salve Regina College v. Russell, 111 S. Ct. 1217, 1225

(1991) (holding that district courts are not entitled to

deference on review of determinations of state law).

Reviewing a dismissal, we apply the law to the facts alleged

in the complaint and taken as true. AVX Corp., 962 F.2d at

115.

The IOLTA Rule obligates lawyers to deposit client

funds which they hold for short terms or in minimal amounts

-33-

into IOLTA accounts. The plaintiffs allege facts which, when

taken as true, establish that avoiding the IOLTA Rule has

significantly limited Attorney Tuttle's practice of law and

negatively affected his livelihood.12 Attorney Howes

alleges that he has had to comply with IOLTA to maintain his

practice of law despite his belief that the IOLTA Rule

compels him to support politics and ideologies with which he

disagrees.

Claimants cannot be required by government action

to relinquish First Amendment rights as a condition of

retaining employment. Keller, 496 U.S. at 10. As alleged by

the plaintiffs, the burden on Tuttle and Howes of avoiding

the IOLTA Rule is more than an inconvenience, although it is

less extreme than forcing loss of employment. See Austin,

110 S. Ct. at 1399 (recognizing that "less extreme

disincentives than the loss of employment" can force

association affecting First Amendment rights). Reviewing the

dismissal of their claims, we take the plaintiffs' factual

allegations as true and we draw the inference in their favor

that they cannot engage in the full practice of law without

holding client funds which would trigger compliance with the

12 We express no opinion concerning whether the Real Estate
Settlement Procedures Act, 12 U.S.C. 2601, requires lawyers
to use IOLTA accounts as alleged by the plaintiffs. Because
the allegation requires a legal conclusion, it is not an
allegation of fact and is not taken as true for purposes of
reviewing the dismissal of the plaintiffs' suit.

-34-

IOLTA Rule.13 Therefore, based on the stated assumptions

and inference, the IOLTA Rule is compulsory as to the two

plaintiffs who are lawyers for purposes of deciding this

case.

A different question is presented as to the

compulsory effect of the IOLTA Rule on plaintiffs who are

clients. Although the IOLTA Rule does not directly regulate

clients, its effect is compulsory because lawyers generally

deposit appropriate funds from clients into IOLTA accounts

without the knowledge or consent of their clients.

13 In a dissent urging a stiffer penalty on a malfeasant
lawyer, the following passage was quoted to illustrate the
importance of holding clients' funds in the practice of law:
"Like many rules governing the
behavior of lawyers, [the rule governing
client funds] has its roots in the
confidence and trust which clients place
in their attorneys. Having sought his
advice and relying on his expertise, the
client entrusts the lawyer with the
transaction including the handling of the
client's funds. Whether it be a real
estate closing, the establishment of a
trust, the purchase of a business, the
investment of funds, the receipt of
proceeds of litigation, or any one of a
multitude of other situations, it is
commonplace that the work of lawyers
involves possession of their clients'
funds. That possession is sometimes
expedient, occasionally simply customary,
but usually essential. Whatever the need
may be for the lawyer's handling of
clients' money, the client permits it
because he trusts the lawyer."
Matter of Driscoll, 575 N.E.2d 46, 51-52 (Mass.

1991)(Greaney, J., dissenting) (quoting Matter of Wilson, 81

N.J. 451, 454, 409 A.2d 1153 (1979)).

-35-

Therefore, the IOLTA Rule effectively coerces clients'

compliance through the practices of their lawyers. Even if

clients were informed of the IOLTA Rule and offered a choice,

we will assume, again for the limited purposes of reviewing

dismissal of this case, that there are circumstances in which

the use of IOLTA accounts is necessary for legal

representation and therefore, that clients would at times be

compelled to allow their funds to be deposited in IOLTA

accounts.

2. Does the IOLTA Rule Compel Speech by the

Plaintiffs?

The client-plaintiffs allege that "the collection

and use of interest, under color of state law, generated from

the IOLTA trust accounts ..., especially for litigation that

involves political or ideological causes, and for legislative

or other forms of lobbying, deprive [plaintiffs] of [their]

right to freedom of speech and association." The lawyer-

plaintiffs allege that forcing them to comply with the IOLTA

Rule requires them to choose between serious curtailment of

their practice of law or "associating with organizations

whose actions offend [their] political and ideological

beliefs" depriving them of their right to freedom of speech

and association.

The plaintiffs rely on the compulsory union fees

and bar association dues cases for support. They argue that

they are required to finance IOLTA program recipient

-36-

and bar association members have been compelled to support
organizations in the same way that dissenting union members

unconstitutional. In Abood, 431 U.S. 209, Detroit school

fees and dues which the Supreme Court has found to be
political and ideological causes through the collection of

teachers challenged an "agency-shop" clause in their

U.S. at 7-9.

-37-
compelled union membership and compelled financial support of
distinguished, for First Amendment purposes, between

unions. Abood, 431 U.S. at 217, n.10; see also Keller, 496

claiming that it violated their First Amendment rights.14

union's collective bargaining efforts to avoid allowing non-
join the representative union to pay dues to support the

members to benefit from collective bargaining, as "free-
The agency-shop clause required employees who chose not to

compel employees financially to support their collective-
riders", without paying. The Supreme Court found that "[t]o
collective-bargaining agreement with the school board

bargaining representative [had] an impact on their First

14 An "agency-shop" does not require union membership of all
unions could not use the dues of dissenters for political or

235-36.
bargaining purpose of the agency-shop requirement. Id. at

ideological causes that were not germane to the collective-

Amendment interests." Id. at 222. The Court held that

employees while a "union-shop" does. The Court has not
In the context of bar association dues, the Court

similarly found that compelled dues of members of a unified

bar association could not be used to finance activities which

were not germane to administrative purposes of the bar

association. Keller, 496 U.S. at 14; see also Schneider v.

Colegio de Abogados de Puerto Rico, 917 F.2d 620 (1st Cir.

1990).

The union fees and bar association dues cases do

not support the plaintiffs' cause nor do other cases which

have considered the First Amendment implications of compelled

contribution to organizations.15 These cases show that

compelled speech, through compelled financial support, arises

from the dissenters' involuntary association with ideology or

political activities. To affect First Amendment rights,

there must be a connection between dissenters and the

15 See, e.g., Hays County Guardian v. Supple, 969 F.2d 111,

122-24 (5th Cir. 1992) (compulsory student fees used to
support university newspaper); cert. denied, 113 S. Ct. 1067

(1993); Carroll v. Blinken, 957 F.2d 991 (2d Cir.)

(compulsory student fees used to support NYPIRG, statewide
student advocacy organization), cert. denied, 113 S. Ct. 300

(1992); United States v. Frame, 885 F.2d 1119 (3d Cir. 1989)

(fee imposed on cattle producers and importers by federal
statute used to fund national beef campaign by remitting
funds to recipient organizations); cert. denied, 493 U.S.

1094 (1990): Galda v. Rutgers, 772 F.2d 1060 (3d Cir. 1985)

(compulsory student fee used to support NJPIRG); cert.

denied, 475 U.S. 1082 (1986); Smith v. Regents of the Univ.

of Calif., 844 P.2d 500 (Cal. 1993) (compulsory student fees

used to support a wide range of student organizations and
activities); Cahill v. Public Service Comm'n, 556 N.E. 2d 133

(N.Y. 1990) (utilities authorized by N.Y. Public Service
Commission to pass along to ratepayers cost of charitable
contributions).

-38-

organization so that dissenters reasonably understand that

they are supporting the message propagated by recipient

organizations. Typically, compelled contribution of money

to support political or ideological causes is the root of the

evil which offends the First Amendment: "'to compel a man to

furnish contributions of money for the propagation of

opinions which he disbelieves, is sinful and tyrannical.'"

Abood, 431 U.S. at 234-35 n.31 (quoting I. Brant, James

Madison: The Nationalist 354 (1948)). In this case, the

plaintiffs' allegations that "[t]he collection of and use of

interest, under color of state law, generated by funds in

IOLTA trust accounts" violate their rights to freedom of

speech and association do not state a claim of compelled

financial support. The interest generated by funds deposited

in IOLTA accounts is not the clients' money. The process by

which the IOLTA program collects and uses the accrued

interest does not affect the plaintiffs' funds held in IOLTA

accounts nor does it require any other expenditures or

efforts by the plaintiffs.16 Put simply, the plaintiffs

have not been compelled by the IOLTA Rule to contribute their

money to the IOLTA program. Rather, the IOLTA program

16 We note that the plaintiff-lawyers are required by the
IOLTA Rule to set up IOLTA accounts in banks and deposit
appropriate client funds therein. Because a comparable
effort would be necessary to set up non-interest bearing
accounts for the deposit of client funds, we find it
inconsequential for First Amendment analysis.

-39-

recipient organizations benefit from an anomaly created by

the practicalities of accounting, banking practices, and the

ethical obligation of lawyers. The interest earned on IOLTA

accounts belongs to no one, but has been assigned, by the

Massachusetts Supreme Judicial Court, to be used by the IOLTA

program. Therefore, the collection and use of the interest

by the IOLTA program does not constitute financial support by

the plaintiffs, as they claim. If the plaintiffs believe

that the IOLTA program is not operated in accord with its

stated purpose or if they remain dissatisfied with the

assigned recipients of IOLTA funds, they may address their

complaints to the IOLTA Committee or the Massachusetts

Supreme Judicial Court.

The plaintiffs have not alleged and there are no

other facts or circumstances which establish that they have

been compelled to associate with or support the IOLTA program

in any other manner. They have not been compelled by the

IOLTA Rule to join, affirm, support or subsidize ideological

expression of IOLTA recipient organizations in any way.17

17 Although the plaintiffs have alleged deprivation of their
right to freedom of association, we have found no factual
allegations to support their claim. The IOLTA Rule does not
require that clients or lawyers join any organization. The
plaintiffs have not alleged that the organizations which
ultimately receive IOLTA funding automatically include them
as members or otherwise link them to the organizations
without their consent. C.f. Carroll, 957 F.2d at 1003

(holding that SUNY Albany's distribution of student fees to
NYPIRG which automatically made all students members,
impermissibly forced association in violation of the First

-40-

Because the plaintiffs have not adequately alleged that the

IOLTA Rule compels a connection between them and the IOLTA

recipient organizations, we find that the IOLTA Rule does not

burden the plaintiffs' First Amendment rights. Having found

no impact on the plaintiffs' First Amendment rights caused by

the IOLTA Rule, we need not consider whether the IOLTA

program serves a compelling state interest. The district

court's order dismissing the plaintiffs' claims is

Affirmed.

Amendment).

-41-