IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-2199
_____

IN RE:  DRESSER INDUSTRIES, INC.,

Petitioner.

_____

Petition for Writ of Mandamus to the
United States District Court for the Southern District of Texas

_____

(  August 21, 1992  )

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this petition for a writ of mandamus, we determine whether a law firm may sue its own client, which it concurrently represents in other matters.  In a word, no; and most certainly not here, where the motivation appears only to be the law firm's self-interest.[1]  We therefore grant the writ, directing the district judge to disqualify counsel.[2]

_____

[1]     Drill Bits was going to be a case that was going to be active, big, protracted, the first price fixing case that's come along in Houston in a long time.  I had made somewhat of a reputation in that area, and I guess it's kind of painful not to be able to play in the game anymore, . . .
Deposition of Stephen D. Susman

[2]The writ issued on March 31, 1992, immediately following oral argument on the petition.

The material facts are undisputed. This petition arises from a consolidated class action antitrust suit brought against manufacturers of oil well drill bits. Red Eagle Resources et al. v. Baker Hughes, et al., No. H-91-627 (S.D.Tex.)("Drill Bits").

Dresser Industries, Inc., ("Dresser") is now a defendant in Drill Bits, charged -- by its own lawyers -- with conspiring to fix the prices of drill bits and with fraudulently concealing its conduct. Stephen D. Susman, with his firm, Susman Godfrey, is lead counsel for the plaintiff's committee. As lead counsel, Susman signed the amended complaint that levied these charges against Dresser, his firm's own client.[3]

Susman Godfrey concurrently represents Dresser in two pending lawsuits. CPS International, Inc. v. Dresser Industries, Inc., No. H-85-653 (S.D.Tex.)("CPS"), is the third suit brought by CPS International, a company that claims Dresser forced it out of the compressor market in Saudi Arabia. CPS International initially sued Dresser for antitrust violations and tortious interference with a contract. The antitrust claim has been dismissed, but the tort claim is scheduled for trial. Susman Godfrey has represented Dresser throughout these actions, which commenced in 1985. During its defense of Dresser, Susman Godfrey lawyers have had relatively

---

[3]The Drill Bits suit was a consolidation of several suits, although Dresser became a defendant following both the consolidation and Susman's appointment as plaintiffs' lead counsel.

unfettered access to data concerning Dresser's management, organization, finances, and accounting practices. Susman Godfrey's lawyers have engaged in privileged communications with Dresser's in-house counsel and officers in choosing antitrust defenses and other litigation strategies. Susman Godfrey has also, since 1990, represented Dresser in Cullen Center, Inc., et al. v. W.R. Gray Co., et al., a case involving asbestos in a Dresser building, which is now set for trial in Texas state court.

On October 24 and November 24, 1991, Susman Godfrey lawyers wrote Dresser informing it that Stephen Susman chaired the plaintiffs' committee in Drill Bits, that Dresser might be made a Drill bits defendant, and that, if Dresser replaced Susman Godfrey, the firm would assist in the transition to new counsel. Dresser chose not to dismiss Susman Godfrey in CPS and Cullen Center.

Dresser was joined as a defendant in Drill Bits on December 2, 1991. Dresser moved to disqualify Susman as plaintiffs' counsel on December 13. Both Dresser and Susman Godfrey submitted affidavits and depositions to the district court, which, after a hearing, issued a detailed opinion denying the motion.

The district court noted that Southern District local rule 4B provides that the code of professional responsibility for lawyers practicing in that district is the Code of Responsibility of the State Bar of Texas. Although the court further noted that other district courts look to other codes in deciding motions to disqualify, nevertheless, it concluded that "Dresser's motion to

disqualify Susman Godfrey is governed wholly by the Texas Disciplinary Rules of Professional Conduct."  The court then focused on Texas Disciplinary Rule 1.06, which provides:

(**b**)...[E]xcept to the extent permitted in paragraph (c), a lawyer shall not represent a person if the representation of that person:
(1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm; or
(2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests.
(**c**) A lawyer may represent a client in the circumstances described in (**b**) if:
(1) the lawyer reasonably believes the representation of each client will not be materially affected; and
(2) each affected or potentially affected client consents to such representation after full disclosure....

The district court described the Drill Bits complaint as a civil antitrust case, thus somewhat softening Dresser's description of it as an action for fraud or criminal conduct.  The court held, "as a matter of law, that there exists no relationship, legal or factual, between the Cullen Center case and the Drill Bits litigation," and that no similarity between Drill Bits and the CPS suits was material.  The court concluded that "Godfrey's representation of the plaintiffs in the Drill Bits litigation does not reasonably appear to be or become adversely limited by Susman Godfrey's responsibilities to Dresser in the CPS and Cullen Center cases," and accordingly denied the motion to disqualify.  Finally, the court denied permissive interlocutory appeal under 28 U.S.C. § 1292(b).

-4-

Our review is governed by the standard required to issue a writ of mandamus, not the standard we would apply if this matter were before us on direct appeal.[4] We will therefore grant the writ only if the petitioner can show its right to the writ is clear and undisputable. Allied Chem. Corp. v. Daiflon, Inc. 449 U.S. 33, 35. (1980). Mandamus is appropriate "when the trial court has exceeded its jurisdiction or has declined to exercise it, or when the trial court has so clearly and indisputably abused its discretion as to compel prompt intervention by the appellate court." In re Chesson, 897 F.2d 156, 159 (5th Cir. 1990).

In evaluating a motion to disqualify, we interpret the controlling ethical norms governing professional conduct as we would any other source of law. When the facts are undisputed, district courts enjoy no particular advantage over appellate courts in formulating ethical rules to govern motions to disqualify. Woods v. Covington County Bank, 537 F.2d 804, 810 (5th Cir. 1976). Thus, in the event an appropriate standard for disqualification is based on a state's disciplinary rules, a court of appeals should

---

[4]The denial of a motion to disqualify counsel is not an appealable collateral order. Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368 (1981). On appeal, the standard of review for the grant or denial of a motion to disqualify would be for abuse of discretion. In re Gopman, 531 F.2d 262 (5th Cir. 1976) *cert. denied* Hobson v. United States, 459 U.S. 906. Underlying determinations would be reversed if findings of fact are clearly erroneous, but the ethical standards applied would be "carefully examined." Brennan's, Inc. v. Brennan's Restaurants, Inc., 590 F.2d 168, 171 (5th Cir. 1979).

consider the district court's interpretation of the state disciplinary rules as an interpretation of law, subject essentially to *de novo* consideration. *See* <u>Woods</u>, 537 F.2d at 810; *see also* <u>Unified Sewerage Agency v. Jelco, Inc.</u>, 646 F.2d 1339,1342, n.1. (9th Cir. 1981).

### III

The district court clearly erred in holding that its local rules, and thus the Texas rules, which it adopted, are the "sole" authority governing a motion to disqualify. Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law. *See* <u>Woods</u>, 537 F.2d at 810; *see also* <u>McCuin v. Texas Power & Light Co.</u>, 714 F.2d 1255 (5th Cir. 1983)(conflict arising from attorney-judge relationship did not require attorney disqualification but judicial recusal); <u>Zylstra v. Safeway Stores, Inc.</u>, 578 F.2d 102 (5th Cir. 1978)(motion to disqualify inextricably linked with motion to certify class); <u>American Can Co. v. Citrus Feed Co.</u>, 436 F.2d 1125 (5th Cir. 1971)(disqualification order reversed as contrary to prevailing ethical principles).

The district court's authority to promulgate local rules is derived from 28 U.S.C. § 2071, which allows the courts only to adopt "rules for the conduct of their business." Thus, although the district court should determine rules for the conduct of attorneys for the purpose of identifying conduct subject to

-6-

sanctions, its local rules alone cannot regulate the parties' rights to counsel of their choice.

IV

We apply specific tests to motions to disqualify counsel in circumstances governed by statute or the Constitution.[5] When presented with a motion to disqualify counsel in a more generic civil case, however, we consider the motion governed by the ethical rules announced by the national profession in the light of the public interest and the litigants' rights. Woods, 537 at 810.; Brennan's Inc. v. Brennan's Restaurants, Inc., 590 F.2d 168, 171 (5th Cir. 1979). Our source for the standards of the profession has been the canons of ethics developed by the American Bar Association. We have applied particularly the requirement of canon 5 that a lawyer exercise "independent professional judgment on behalf of the client" and the admonition of canon 9 that lawyers should "avoid even the appearance of impropriety." Zylstra, 578 F.2d at 104.

Our most far-reaching application of the national standards of attorney conduct to an attorney's obligation to avoid conflicts of

---

[5]Under 11 U.S.C. §§ 327 and 328, a conflict of interest by an attorney toward the debtor and a creditor can require disgorgement of fees. *See* In re Humble Place Joint Venture, 936 F.2d 814, 815 (5th Cir. 1991). There are also well-developed standards governing when an attorney may represent criminal defendants simultaneously with co-defendants, *see* U.S. v. Casiano, 929 F.2d 1046, 1051, *et seq.* (5th Cir. 1991), or following the representation of a government witness. U.S. v. Martinez, 630 F.2d 361 (5th Cir. 1980).

interest is <u>Woods v. Covington County Bank</u>, 537 F.2d 804 (5th Cir. 1976)(attorney in army reserve not barred from privately representing clients in securities matters he had investigated while on active duty). We held in <u>Woods</u> that standards such as the ABA canons are useful guides but are not controlling in adjudicating such motions. *Id.*[6] The considerations we relied upon in <u>Woods</u> were whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case. 537 F.2d at 812-813.

We applied the <u>Woods</u> standard to conflicts based on representation against a *former* client in <u>Wilson P. Abraham Construction Corp. v. Armco Steel Corp.</u>, 559 F.2d 250 (5th Cir. 1977)[7] and <u>Brennan's Inc. v. Brennan's Restaurants, Inc.</u>, 590 F.2d 168 (5th Cir. 1979). Under the test developed in those cases, a lawyer would be disqualified if he sued a former client in a matter substantially related to the representation of the former client. <u>Wilson P. Abraham</u> 559 F.2d at 252. The former client did not have

---

[6]The same approach is, incidentally, taken by the Texas courts. *See* <u>Spears v. Fourth Court of Appeals</u>, 797 S.W.2d 654, 656 (Tex. 1990).

[7]Stephen Susman was the lawyer who was barred in <u>Abraham Construction Corp.</u> from representing a client in a suit against a former client.

to show that privileged information was made actually available for use in the later case.  <u>Brennan's</u> 590 F.2d at 172.

In <u>Woods</u>, <u>Wilson Abraham</u>, and <u>Brennan's</u>, we applied national norms of attorney conduct to a conflict arising after the attorney's prior representation had been concluded.  Now, however, we are confronted with our first case arising out of concurrent representation, in which the attorney sues a client whom he represents on another pending matter.  We thus consider the problem of concurrent representation under our framework in <u>Woods</u> as tailored to apply to the facts arising from concurrent representation.

We turn, then, to the current national standards of legal ethics to first consider whether this dual representation amounts to impropriety.  Neither the ABA Model Rules of Professional Conduct[8] nor the Code of Professional Responsibility[9] allows an

---

[8]ABA Model Rule of Professional Conduct 1.7 provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client ... unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation.

Forty-five states now follow the Model Rules with some amendments.

attorney to bring a suit against a client without its consent.[10]

ABA/BNA Lawyer' Manual On Professional Conduct 01:3 (1992 update). Our cases based on the language of the Model Code are not greatly altered by the states' change to the Model Rules. We consider both to be effective pronouncements of the  standards generally accepted by the profession.

[9]The ABA Model Code of Professional Responsibility Ethical Consideration 5-2 provides:

> A lawyer should not accept proffered employment if his personal interest or desires will, or there is a reasonable probability that they will, affect adversely the advice to be given or services to be rendered the prospective client. After accepting employment, a lawyer carefully should refrain from ... assuming a position that would tend to make his judgment less protective of the interests of his client.

Ethical Consideration 5-19 provides:

> A lawyer may represent several clients whose interests are not actually or potentially differing. ..... Regardless of the belief of a lawyer that he may properly represent multiple clients, he must defer to a client who holds the contrary view and withdraw from representation of that client.

[10]The agreement between the Code and Rules on this point is made obvious in the practice guide of the ABA/BNA Lawyer's Manual On Professional Conduct, which discusses the obligations of a lawyer under both the ABA rules and code.  The practice guide describes a bar to a nonconsensual representation adverse to the client:

> A lawyer may not represent one client whose interests are adverse to those of another current client of the lawyer's even if the two representations are unrelated, unless the clients consent and the lawyer believes he or she is able to represent each client without adversely affecting the other.  Courts and ethics panels generally take a broad view of this restriction, and a specific adverse effect probably will not have to be shown.  All that need be present is that one lawyer is or firm is representing two clients, even in unrelated matters, with

This position is also taken by the American Law Institute in its drafts of the <u>Restatement of the Law Governing Lawyers</u>.[11] Unquestionably, the national standards of attorney conduct forbid a lawyer from bringing a suit against a current client without the consent of both clients.[12]  Susman's conduct violates all of these

_____

potentially conflicting interests.

<u>ABA/BNA Lawyer's Manual On Professional Conduct</u>, 51:101 (1990 supp.).

[11]The most recent draft of *The Restatement of the Law Governing Lawyers* forbids a lawyer from suing a client in another case without all parties' consent.  <u>Restatement (Third) Lawyers</u> § 209 (tent. draft No.4, 1991).  In the comments to this draft, the reporter notes

> A lawyer's representation of Client A may require the lawyer to file a lawsuit against Client B whom the lawyer represents in an unrelated matter.  It might seem that no conflict of interest is presented by such a case if Client B is represented in Client A's suit by a lawyer unaffiliated with the lawyer for Client A. .... However, the lawyer has a duty of loyalty to the client being sued, and the client on whose behalf suit is filed might fear that the lawyer would pursue that client's case less effectively out of deference to the other client. .... Because what is at stake is the lawyer's loyalty, the rule should be applied so as to minimize the impact on the choice of counsel by the affected clients.

<u>Restatement (Third) Lawyers</u> § 209, com. d, p. 114 (tent. draft No. 4, 1991).

[12]We note that there is a limited utility to seeking the consent of the client in a class action.  In class actions, the court must independently determine whether the lawyer for the class can fairly represent all of the members of the class, and a lawyer's conflicts with the defense may forbid such representation. In <u>Doe v. A Corporation</u>, 709 F.2d 1043 (5th Cir. 1983), we held that a lawyer could not represent a class against his former client even though he could represent himself as a class member, because the client could move to prevent the lawyer from revealing privileged information, to the detriment of the class as a whole.

standards -- unless excused or justified under exceptional circumstances not present here.

Exceptional circumstances may sometimes mean that what is ordinarily a clear impropriety will not, always and inevitably, determine a conflicts case. Within the framework we announced in Woods, Susman, for example, might have been able to continue his dual representation if he could have shown some social interest to be served by his representation that would outweigh the public perception of his impropriety.[13] Susman, however, can present no such reason. There is no suggestion that other lawyers could not ably perform his offices for the plaintiffs, nor is there any basis for a suggestion of any societal or professional interest to be served. This fact suggests a rule of thumb for use in future motions for disqualification based on concurrent representation:

---

In any event, Susman's clients have not consented.

[13]We found above that the Texas rules of discipline do not control a motion to disqualify in federal court. We are mindful, however, that the Texas rules' allowance of some concurrent representation is based, in part, on a concern that concurrent representation may be necessary either to prevent a large company, such as Dresser, from monopolizing the lawyers of an area or to assure that certain classes of unpopular clients receive representation. Although we do not now reach the matter, our consideration of social benefit to offset the appearance of impropriety *might* allow such a representation if the balance clearly and unequivocally favored allowing such representation to further the ends of justice.
We believe, moreover, that the Texas rules are drawn to allow concurrent representation as the exception and not the rule. Even if the Texas rules had applied, no special circumstances being present here, Texas rule 1.06's prohibition of representation of potentially adverse interests would have barred the representation.

However a lawyer's motives may be clothed, if the sole reason for suing his own client is the lawyer's self-interest, disqualification should be granted.[14]

V

We find, therefore, that Dresser's right to the grant of its motion to disqualify counsel is clear and indisputable. We further find that the district court clearly and indisputably abused its discretion in failing to grant the motion. We have thus granted the petition and have issued the writ of mandamus, directing the United States District Court for the Southern District of Texas to enter an order disqualifying Stephen D. Susman and Susman Godfrey from continuing as counsel to the plaintiffs in Red Eagle Resources et al. v. Baker Hughes, et al., No. H-91-627.

WRIT GRANTED.

---

[14]This result accords with the approach of other circuits, which have similarly found concurrent representation to be grossly disfavored. *See, e.g.,* International Business Machines Corp. v. Levin, 579 F.2d 271 (3d Cir. 1978)(antitrust plaintiff firm disqualified from suing company for which it was on retainer); Cinema 5, Ltd. v. Cinerama, Inc. (2d Cir. 1976)(antitrust plaintiff counsel's representation while firm was counsel in an unrelated antitrust case was *prima facie* improper); EEOC v. Orson H. Gygi Co., Inc., 749 F.2d 620 (10th Cir. 1984)(attorney disqualified from defending employer in sex discrimination suit by employee represented in state annulment proceeding).