Note: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1108, -1116

COMMONWEALTH SCIENTIFIC & INDUSTRIAL
RESEARCH ORGANISATION,

Plaintiff-Appellee,

v.

TOSHIBA AMERICA INFORMATION SYSTEMS, INC.,
NINTENDO OF AMERICA, INC., FUJITSU COMPUTER SYSTEMS CORPORATION,
ASUS COMPUTER INTERNATIONAL, D-LINK SYSTEMS, INC.,
BELKIN CORPORATION, ACCTON TECHNOLOGY CORPORATION USA,
SMC NETWORKS, INC., 3COM CORPORATION, BELKIN INTERNATIONAL, INC.,
and ACCTON TECHNOLOGY CORPORATION,

Defendants,

and

MARVELL ASIA PTE., LTD., MARVELL INTERNATIONAL, LTD.,
and MARVELL SEMICONDUCTOR, INC.,

Movants-Appellants.

-------------------------------------------------------------------------------------------

MICROSOFT CORPORATION, APPLE COMPUTER, INC.,
HEWLETT-PACKARD COMPANY and NETGEAR, INC.,

Plaintiffs,

v.

COMMONWEALTH SCIENTIFIC & INDUSTRIAL
RESEARCH ORGANISATION,

Defendant-Appellee,

v.

MARVELL ASIA PTE., LTD., MARVELL INTERNATIONAL, LTD.,

and MARVELL SEMICONDUCTOR, INC.,

Movants-Appellants.

James M. Wagstaffe, Kerr & Wagstaffe, LLP, of San Francisco, California, argued for plaintiff-appellee and defendant-appellee. With him on the brief were Michael K. Ng and Keith K. Fong.

Paul B. Gaffney, Williams & Connolly LLP, of Washington, DC, argued for movants-appellants. With him on the brief was John G. Kester. Of counsel on the brief were Warren S. Heit, White & Case LLP, of Palo Alto, California, and Marc E. Ackerman, of New York, New York.

Appealed from: United States District Court for the Eastern District of Texas

Judge Leonard Davis

NOTE: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

2008-1108, -1116

COMMONWEALTH SCIENTIFIC & INDUSTRIAL
RESEARCH ORGANISATION,

Plaintiff-Appellee,

v.

TOSHIBA AMERICA INFORMATION SYSTEMS, INC.,
NINTENDO OF AMERICA, INC., FUJITSU COMPUTER SYSTEMS CORPORATION,
ASUS COMPUTER INTERNATIONAL, D-LINK SYSTEMS, INC.,
BELKIN CORPORATION, ACCTON TECHNOLOGY CORPORATION USA,
SMC NETWORKS, INC., 3COM CORPORATION, BELKIN INTERNATIONAL, INC.,
and ACCTON TECHNOLOGY CORPORATION,

Defendants,

and

MARVELL ASIA PTE., LTD., MARVELL INTERNATIONAL, LTD.,
and MARVELL SEMICONDUCTOR, INC.,

Movants-Appellants.

MICROSOFT CORPORATION, APPLE COMPUTER, INC.,
HEWLETT-PACKARD COMPANY, AND NETGEAR, INC.,

Plaintiffs,

v.

COMMONWEALTH SCIENTIFIC & INDUSTRIAL
RESEARCH ORGANISATION,

Defendant-Appellee,

v.

MARVELL ASIA PTE, LTD., MARVELL INTERNATIONAL, LTD.,
and MARVELL SEMICONDUCTOR, INC.,

Movants-Appellants.

Appeals from the United States District Court for the Eastern District of Texas in Cases No. 06-CV-550 and No. 06-CV-549, Judge Leonard Davis.

_____

DECIDED:  October 23, 2008

_____

Before LINN and DYK, <u>Circuit Judges</u>, and STEARNS, <u>District Judge</u>. [*]

STEARNS, <u>District Judge</u>.

Marvell Semiconductor, Inc., Marvell Asia PTE, Ltd., and Marvell Int'l, Ltd. (collectively "Marvell"), appeal from a decision of the United States District Court for the Eastern District of Texas denying a motion to intervene for the purpose of seeking a stay of proceedings or, in the alternative, the disqualification of the law firm of Townsend and Townsend and Crew LLP ("Townsend"), counsel for appellee Commonwealth Scientific & Industrial Research Organization (CSIRO).  <u>See</u> <u>Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.</u>, 2007 WL 4376104 (E.D. Tex. Dec. 13, 2007).[1]  We affirm.

_____

[*]       Honorable Richard G. Stearns, District Judge, United States District Court for the District of Massachusetts, sitting by designation.

[1]       In May of 2005, anticipating suit by CSIRO, Microsoft and Intel Corporation filed separate declaratory judgment actions against CSIRO in the Northern District of California.  In December of 2006, the actions were transferred to Judge Leonard Davis in the Eastern District of Texas.  <u>See</u> Case No. 6:06-CV-549-LED ("<u>Microsoft</u> action"), and Case No. 6:06-CV-551-LED ("<u>Intel</u> action").  In December of 2006, CSIRO asserted patent infringement claims against Toshiba America Information Systems, Inc., and ten other computer parts manufacturers.  <u>See</u> Case No.

2008-1108, -1116                           2

## I. BACKGROUND

CSIRO, a scientific research arm of the Australian government, holds U.S. Patent No. 5,487,069 ("the '069 patent"), entitled "Wireless LAN."  The '069 patent teaches a transceiver design for the wireless transmission of data over a local area network ("LAN").  CSIRO claims that the '069 patent defines the operating technology used by most LAN devices worldwide.  Marvell supplies semi-conductor chips to manufacturers of LAN-related products, such as notebook computers.

Townsend represents CSIRO in its efforts to enforce the '069 patent.  Townsend has filed infringement claims on behalf of CSIRO against a number of LAN component manufacturers, including customers of Marvell.[2]  Marvell claims to have indemnity agreements with at least three customers who are parties to the Microsoft and Toshiba actions.[3]  Townsend also represents CSIRO in negotiations over the licensing of the '069 patent.

In February of 1999, three years before CSIRO became a client, Townsend

6:06-CV-550-LED ("Toshiba action").  Neither Microsoft nor Intel is named as a defendant in the Toshiba action.

[2]  Townsend has represented CSIRO since 2002 in litigation and licensing matters involving the '069 patent.

[3]  On January 23, 2005, Marvell signed an agreement to indemnify "Customer A" "in certain patent infringement claims."  In May of 2005, Marvell and Customer A signed a forbearance agreement tolling Customer A's indemnification claims.  Four days later, Customer A intervened as a plaintiff in the Microsoft action.  On September 4, 2006, Marvell signed an indemnity agreement with "Customer B."  Three weeks later, CSIRO filed an answer and counterclaims alleging infringement of the '069 patent by Microsoft and Intel.  In October of 2006, Customer A made a second tender to Marvell under the indemnity agreement.  On December 22, 2006, CSIRO filed the Toshiba action.  One month later, Customer B made a tender to Marvell under its indemnity agreement.  There are no details in the record regarding "Customer C," other than a notation in Judge Davis's opinion that the identify of Customer C (as well as Customer B, but not Customer A) was disclosed by Marvell to the court.

began representing Marvell in trademark prosecutions. In late 2005, Marvell began sending patent work to Townsend. During 2006, Townsend represented Marvell in the prosecution of four patent applications for LAN-related inventions. Sometime in early 2005, Marvell learned that Townsend also represented CSIRO. In June of 2005 and February of 2006, Marvell asked Townsend to act as an intermediary in negotiating a license from CSIRO. Townsend advised Marvell on both occasions that a license was unnecessary because CSIRO had no intention of suing LAN component manufacturers.

On March 5, 2007, Marvell made a third inquiry of Townsend about obtaining a license from CSIRO. After considerable back-and-forth, Townsend informed Marvell that it would need a written conflict waiver before undertaking a license negotiation. Marvell agreed to waive any prospective conflict, but not past conflicts. On March 13, 2007, Marvell informed Townsend of the existence of the indemnity agreements. Marvell accused Townsend of violating its ethical obligations and duty of loyalty to Marvell by its continued representation of CSIRO.

On March 21, 2007, Marvell filed suit against Townsend in the California state court, seeking to enjoin Townsend from representing CSIRO in the Microsoft and Toshiba actions. In May of 2007, Marvell brought a declaratory judgment action against CSIRO in the Eastern District of Texas, Case No. 6:07-CV-204-LED, seeking a judgment of non-infringement. On June 13, 2007, the California court ruled that it lacked jurisdiction to enter an order disqualifying a law firm from representing a party in a federal court action.

On July 3, 2007, Marvell sought permission to intervene in the Microsoft and Toshiba actions for the limited purpose of seeking a stay of the litigation involving its

customers, or in the alternative, the disqualification of Townsend.[4]  On December 13,

2007, Judge Davis denied Marvell's motion to intervene as moot after discussing the

merits of Marvell's motion to stay and/or disqualify (both of which Judge Davis also

denied).[5]  This appeal followed.

## II. DISCUSSION

This Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).  Denying a motion

to intervene is a final judgment subject to appellate review.  See Stringfellow v.

Concerned Neighbors In Action, 480 U.S. 370, 377 (1987) ("[W]hen an order prevents a

putative intervenor from becoming a party in any respect, the order is subject to

immediate review.").  We need not decide whether in general in considering an appeal

from the denial of a motion to intervene, we may also consider the merits of the specific

underlying reason for which intervention is sought, in this case the disqualification

motion.  This is an unusual situation in which a district court denied a motion to

intervene after rejecting the underlying disqualification motion on its merits.[6]  We

---

[4]        No customer of Marvell joined the motion; one opposed it.

[5]        Marvell sought to intervene in the alternative as a matter of right, although
its motion clearly fell under the permissive intervention prong of Fed. R. Civ. P. 24(b),
and was treated as such by Judge Davis.

[6]        Marvell also sought, in the alternative, a stay pursuant to the "customer-
suit doctrine."  Under this doctrine, "litigation against or brought by the manufacturer of
infringing goods takes precedence over a suit by the patent owner against customers of
the manufacturer."  Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990).
The district court rejected a stay on the ground that Marvell's justification – that a stay
would obviate the need to disqualify Townsend – was spurious in light of Marvell's
admission that a stay would not in fact negate the issue.  As Judge Davis observed,
"partially staying the case without addressing the disqualification issue would . . . only
prolong the issue instead of efficiently disposing of it."  We agree with the district court's
reasoning in this regard and follow its example in focusing our analysis on the motion
for disqualification.

conclude that the district court did not err in rejecting the motion to disqualify, and thus did not err in denying intervention.[7]

As the parties recognize, a motion to disqualify counsel is governed by Fifth Circuit law. Picker Int'l, Inc. v. Varian Assocs., Inc., 869 F.2d 578, 580-81 (Fed. Cir. 1989). In the Fifth Circuit, motions to disqualify counsel "are determined by applying standards developed under federal law," and "by reference to the ethical rules announced by the national profession." In re Dresser Indus., Inc., 972 F.2d 540, 544, 543 (5th Cir. 1992).[8] In resolving conflict issues, the Fifth Circuit looks to the American Bar Association (ABA) Model Rules. See Perillo v. Johnson, 205 F.3d 775, 801 (5th Cir. 2000); In re Asbestos Litig., 90 F.3d 963, 977 (5th Cir. 1996); Beets v. Scott, 65 F.3d 1258, 1269-70 (5th Cir. 1995). ABA Model Rule 1.7(a) states that:

> [e]xcept as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or third person or by a personal interest of the lawyer.

In his analysis, Judge Davis concluded that Marvell's motion should be governed by the more lenient disqualification standard that applies to former as opposed to concurrent client representation. In this regard, Judge Davis credited Townsend's claim

---

[7] Since the issue has not been raised by either party, we express no view as to whether the district court properly tied the intervention motion to the merits of the disqualification motion.

[8] The moving party bears the burden of proving that disqualification is warranted. See In re Am. Airlines, Inc., 972 F.2d 605, 614 (5th Cir. 1992).

that it only became aware of the potential conflict arising from its representation of CSIRO in March of 2007 when Marvell disclosed the existence of the indemnity agreements.  Upon being informed of the agreements (and after being denied a waiver), Townsend terminated its representation of Marvell.

In deciding to treat CSIRO as a former client of Townsend's, Judge Davis relied principally on comment 5 to ABA Model Rule 1.7.  Comment 5 recognizes the "thrust upon" exception to what is colloquially termed the "hot potato" gambit — the stratagem by which a law firm creates a conflict to rid itself of one client so as to retain another (usually more lucrative) client.[9]  See Picker, 869 F.2d at 582.  As Judge Davis explained, "[t]he 'thrust upon' exception applies when [as here] unforeseeable developments cause two concurrent clients to become directly adverse."  Microsoft, 2007 WL 4376104, at *6.

Marvell objects vehemently to Judge Davis's finding that it created the conflict in March of 2007 by disclosing to Townsend the hitherto concealed indemnity agreements.  Marvell maintains that the conflict arose in September of 2006 when Townsend filed counterclaims on behalf of CSIRO in the Microsoft action, and was exacerbated in December of 2006 when the Toshiba action was filed (thereby potentially exposing

---

[9]         Comment 5 to ABA Model Rule 1.7 states that "[u]nforeseeable developments, such as changes in corporate and other organizational affiliations or the addition or realignment of parties in litigation, might create conflicts in the midst of a representation, as when a company sued by the lawyer on behalf of one client is bought by another client represented by the lawyer in an unrelated matter.  Depending on the circumstances, the lawyer may have the option to withdraw from one of the representations in order to avoid the conflict.  The lawyer must seek court approval where necessary and take steps to minimize harm to the clients.  See Rule 1.16.  The lawyer must continue to protect the confidences of the client from whose representation the lawyer has withdrawn.  See Rule 1.9(c)."

Marvell to liability under the agreements).[10]  Marvell contends that Townsend should have known of the existence of the agreements because such agreements are an "industry standard."  Therefore, Marvell argues, it was incumbent on Townsend to "discover" the conflict without Marvell's assistance.

The argument is unpersuasive.  As Judge Davis observed,

> Marvell takes the position that it had no reason to disclose its indemnity obligations as those agreements might be used against them in licensing negotiations with CSIRO.  While Marvell is free to choose which facts it does and does not disclose to counsel, Marvell cannot subsequently assert those purposefully withheld facts as a means to disqualify.  This is the exact scenario Comment 5 [to ABA Model Rule 1.7] contemplates.

Microsoft, 2007 WL 4376104, at *7.  We agree with Judge Davis that the more lenient standard of ABA Model Rule 1.9 governing conflicts involving the representation of former clients applies to Marvell's motion to disqualify.[11]

In cases involving former representation, a party moving for disqualification must prove that the present and former matters are so "substantially related" that confidential client information may be presumed to have been disclosed or that such information was actually disclosed by counsel.  Am. Airlines, 972 F.2d at 614-15.  Under the "substantial relationship" test, the movant must prove: "(1) an actual attorney-client

---

[10]     Marvel knew as early as 2004 of the threat of litigation over the '069 patent.  Marvell participated in joint meetings convened among potential defendants to develop a common defense strategy.  CSIRO filed the first of its infringement actions against Buffalo Technology (USA), Inc., in the Eastern District of Texas in February of 2005.

[11]     "A party seeking to disqualify opposing counsel on the ground of a former representation must establish that:  (1) an actual attorney-client relationship existed between the moving party and the opposing counsel; (2) the present litigation involves a matter that is 'substantially related' to the subject of the movant's prior representation; and (3) the interests of the opposing counsel's present client are materially adverse to the movant."  ABA Model Rule 1.9.

2008-1108, -1116                          8

relationship between [it] and the attorney [it] seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations." Id. at 614. In applying the test, courts consider three relevant factors: "(1) the factual similarities between the current and former representations, (2) the similarities between the legal questions posed, and (3) the nature and extent of the attorney's involvement with the former representation." Power Mosfet Techs, L.L.C. v. Siemens AG, 2002 WL 32785219, at *2 (E.D. Tex. Sept. 30, 2002). We agree with Judge Davis that Marvell failed to meet its burden of showing a substantial relationship between the prior work done on its behalf by Townsend and the LAN-related products figuring in the Microsoft and Toshiba actions.[12]

With respect to the disclosure of confidential client information, Marvell raises several possibilities, only one of which merits discussion. In June of 2007, Townsend undertook to recruit attorney Andrew Pratt as an associate in its Washington, D.C. office. While employed as a junior lawyer at the firm of McGuireWoods LLP, Pratt attended a meeting on February 1, 2007, at which Marvell's strategy in dealing with the CSIRO litigation was discussed. Marvell also claims that Pratt was copied on related emails and other documents. When Townsend learned of the conflict involving Pratt, it asked Marvell for a waiver. When Marvell refused, Townsend rescinded its job offer to Pratt who has since been given only unrelated legal work by Townsend as a home-based independent contractor. Marvell does not contradict Townsend's affidavits that

---

[12] Specifically, Judge Davis noted that Marvell offered no evidence – only "broad statements" – that Townsend worked on matters related to Marvell's LAN products, and gave no explanation of how Townsend's work on Marvell's LAN patent applications in 2006 could possibly relate to products that were accused in litigation begun eighteen months earlier.

Pratt has no access to Townsend's files, computer network, or telephone system, or that he has no interaction with the lawyers assigned to the CSIRO team.[13]  We agree with Judge Davis that Townsend fully discharged its ethical obligations to Marvell by the manner in which it dealt with Pratt.

Because we find that the district court properly denied Marvell's motion to intervene, we affirm.

_____

[13]     "Townsend employees have been instructed not to communicate with [Pratt] regarding his limited work for Marvell or any matters pertaining to CSIRO, and he has been instructed not to talk to anyone at Townsend about such work."  J.A. 632 (Herhold Decl. ¶ 4).