## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 4, 2009

Charles R. Fulbruge III
Clerk

No. 09-20005

In re: BEAZLEY INSURANCE CO.

Petitioner

Petition for Writ of Mandamus to the United States
District Court for the Southern District of Texas
(08-CV-3340)

Before WIENER, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

The petition for panel rehearing is GRANTED. We withdraw our prior unpublished opinion[1] and substitute the following opinion:

Beazley Insurance Company ("Beazley") petitions for a writ of mandamus directing the district court to remand the instant case to Texas state court and to vacate the district court's orders requiring Beazley to mediate before Bankruptcy Judge Isgur. Determining that mandamus relief is inappropriate on the discrete facts of this case, we deny relief.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 2009 WL 205859 (5th Cir. Jan. 29, 2009) (unpublished).

# I. FACTS AND PROCEEDINGS

Plaintiffs in the underlying suit, Doctors Hospital 1997, L.P. and Tidwell/Parkway Property Holdings, L.P. (collectively, the "Hospital"), have a troubled financial history in which operating expenses now exceed revenues by approximately $1.5 million per month. To cover the shortfall, the Hospital borrowed several million dollars from dismissed defendant GE HFS Holdings, Inc. ("GE HFS"). By the time it filed the instant lawsuit, the Hospital was in default on its loans from GE HFS and owed GE HFS more than $20 million. GE HFS refused to lend any additional funds to the Hospital and had called the outstanding loans.

The Hospital holds an insurance policy from petitioner Beazley that covers property damage and business-interruption loss at each of the Hospital's two facilities, the Tidwell and Parkway campuses. GE HFS is named as an additional insured on the policy.[2] In September 2008, Hurricane Ike damaged both campuses, with the Parkway location suffering serious damage. The Hospital elected to close the Parkway campus rather than to repair it and filed a claim with Beazley for both property-damage and business-interruption losses. Beazley has to date disbursed at least $2.5 million and, at the time of suit, was continuing to issue monthly business-interruption payments and to adjust claims as the Hospital submitted documentation.

GE HFS asserted that it was entitled to receive whatever insurance proceeds Beazley paid out so that the funds, at GE HFS's discretion, would pay down the Hospital's outstanding debt.

---

[2] General Electric is actually named as the additional insured party rather than the related entity, GE HFS.

On November 5, 2008, the Hospital filed its original petition in Texas state court naming both GE HFS and Beazley as defendants.[3] As to GE HFS, the Hospital asserted breach of fiduciary duty, tortious interference with contract, breach of contract, and economic distress claims for "GE [HFS]'s egregious misconduct and blatant attempts to bankrupt" the Hospital. As to Beazley, the Hospital asserted only a breach of contract claim alleging that Beazley "failed to timely make all payments required under the Policy." Later that day, the state judge granted an *ex parte* temporary restraining order directing Beazley to advance $1.5 million to the Hospital; Beazley complied.

On November 10, GE HFS removed the instant case to the District Court for the Southern District of Texas on the basis of diversity jurisdiction.[4] GE HFS neither sought nor obtained consent to removal from its co-defendant Beazley because, according to GE HFS, Beazley was a mere nominal party to the suit.

The Hospital proceeded to file an application for preliminary injunction to (1) prevent GE HFS from collecting insurance proceeds as payment for outstanding debt and (2) require Beazley to follow the terms of the insurance policy and to "[i]mmediately fund all business interruption proceeds owed directly and solely to [the Hospital]." On November 17, the district court held a hearing at which the Hospital asserted that without injunctive relief, it would no longer be able to operate. At the hearing, the district court indicated that in addition to the disputed financial issues, it recognized the community's interest

---

[3] The previous day, November 4, the Hospital filed an identical suit in state court. GE HFS removed that suit to the District Court for the Southern District of Texas on November 5. The Hospital voluntarily dismissed that suit only to re-file the identical instant case in state court later that same day.

[4] The parties do not dispute the district court's diversity jurisdiction. The Hospital consists of two Texas limited partnerships; their principal places of business are in Texas. GE HFS is a Delaware corporation; its principal place of business is in Maryland. Beazley is a Connecticut corporation; its principal place of business is in Connecticut.

in the Hospital's continued operation. The court ordered the parties to mediate before Bankruptcy Judge Isgur the following day.

All parties attended that mediation and, on the afternoon of November 18, Judge Isgur reported to the district court that the Hospital and GE HFS were progressing toward a resolution that would require GE HFS to release some of the Beazley insurance proceeds that had been disbursed to GE HFS. Judge Isgur also advised the court that the Hospital needed an additional $800,000 no later than the next day. The district court instructed Beazley and GE HFS to be prepared to pay that amount. The mediation then continued.

The next morning, the district court held a hearing during which, Judge Isgur notified the court, the Hospital and GE HFS reached a settlement. According to the terms of the settlement, (1) GE HFS was dismissed with prejudice from the suit; (2) GE HFS agreed to release $2.2 million to the Hospital; and (3) the Hospital assigned certain rights to GE HFS to prosecute its claims against Beazley. The Hospital and Beazley failed to reach a settlement. At the hearing, Judge Isgur informed the district court that, although the other parties had mediated in good faith, Beazley "did not negotiate in good faith."

On the same day, Beazley filed a motion to remand to state court on the ground that it was not a mere nominal party, but instead had a real stake in the litigation because the amount of insurance proceeds payable under the policy was disputed.

On November 24, the Hospital and GE HFS — now participating as the Hospital's co-plaintiff rather than as a defendant (the "Plaintiffs") — filed an amended complaint in the district court asserting only the breach of contract claim against Beazley, the sole remaining defendant. The amended complaint

alleges that Beazley breached the terms of the insurance policy in a variety of ways that caused substantial losses.[5]

On December 1, the district court ordered the parties to mediate again before Judge Isgur during the ensuing 60 to 90 days. Accordingly, the district court stayed the case and extended all deadlines for an additional 90 days. Beazley sought to vacate the December 1 order on the ground that Judge Isgur's impartiality was questionable; the district court denied that motion.

On December 18, the district court denied Beazley's motion to remand on the basis that Beazley's consent was not required when GE HFS originally removed the case to federal court.[6]

On January 9, 2009, Beazley filed the instant petition for writ of mandamus.[7]

## II. STANDARD OF REVIEW

The All Writs Act authorizes us to "issue all writs necessary or appropriate in aid of [our] respective jurisdiction[] and agreeable to the usages and principles of law."[8] The writ of mandamus is, however, a "drastic and extraordinary remedy reserved for really extraordinary causes."[9]

> Because the writ is an extraordinary remedy, the Supreme Court has established three requirements that must be met before a writ may issue: (1) "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires — a

---

[5] Beazley filed a motion for more definite statement, which the district court denied.

[6] Beazley requested that the district court certify its interlocutory order for appeal pursuant to 28 U.S.C. § 1292(b). The court declined to do so.

[7] Simultaneously with the filing of its petition for writ of mandamus, Beazley filed a motion for stay in this court seeking temporary relief from mediating before Judge Isgur pending our decision in the mandamus action. Because we issue our ruling on Beazley's petition today, we will deny the motion to stay as moot.

[8] 28 U.S.C. § 1651(a); *see Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004).

[9] *Cheney*, 542 U.S. at 380 (internal quotation marks and citation omitted).

condition designed to ensure that the writ will not be used as a substitute for the regular appeals process"; (2) "the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable"; and (3) "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances. . . . These hurdles, however demanding, are not insuperable."[10]

We address in turn each of Beazley's putative bases for mandamus relief.

### III. District Court's Denial of Remand

### A. No Other Adequate Means to Attain Relief

Beazley contends that our recent en banc decision in *In re Volkswagen* lends sufficient support to conclude that it has no other adequate means to attain relief.[11] We agree.

In *In re Volkswagen*, following the district court's denial of a defendant's 28 U.S.C. § 1404(a) motion to transfer venue, the petitioner sought a writ of mandamus directing the district court to transfer the case.[12] As in the instant case,[13] interlocutory review of the district court's order was unavailable.[14] We said:

---

[10] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (quoting *Cheney*, 542 U.S. at 380–81).

[11] *Id.* at 318–19.

[12] *Id.* at 307–08.

[13] *See Aaaron v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 876 F.2d 1157, 1160 (5th Cir. 1989) ("A district court's denial of a motion to remand is not a final order, and it therefore is not reviewable on [interlocutory] appeal.").

[14] *In re Volkswagen*, 545 F.3d at 319. In the instant case, the district court *declined* to grant certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In *In re Volkswagen*, the denial of transfer was an order *ineligible* for interlocutory review under section 1292(b). *Id.* Any distinction between the two situations is immaterial to our inquiry as the effect on the petitioner in both cases was the same — unavailability of an interlocutory appeal.

As Judge Posner has noted, a petitioner "would not have an adequate remedy for an improper failure to transfer the case by way of an appeal from an adverse final judgment because [the petitioner] would not be able to show that it would have won the case had it been tried in a convenient [venue]." . . . And the harm — inconvenience to witnesses, parties and other — will already have been done by the time the case is tried and appealed, and *the prejudice suffered cannot be put back in the bottle.* Thus, the writ is not here used as a substitute for an appeal, as an appeal will provide no remedy for a patently erroneous failure to transfer venue.[15]

We recognize that, technically, the district court's denial of Beazley's motion to remand will be reviewable on appeal pursuant to 28 U.S.C. § 1291.[16] Yet, venue transfer orders like the one in *In re Volkswagen* are also reviewable on appeal.[17] Our decision in *In re Volkswagen* thus forecloses this fact from being determinative.[18] For the purpose of our inquiry today, the Plaintiffs set forth no rationale for distinguishing a denial of a motion to transfer venue from denial of a motion to remand to state court. Beazley has no adequate means of relief other than the extraordinary writ it now seeks.[19]

**B. Clear and Indisputable Right to the Issuance of the Writ**

---

[15] *Id.* at 318–19 (quoting *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663 (7th Cir. 2003)) (emphasis added).

[16] *See, e.g.*, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002).

[17] *See, e.g.*, *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 631 (5th Cir. 2008).

[18] 545 F.3d at 318–19. *But see In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006) (concluding that "an appeal after final judgment is not an illusory or ineffectual means through which petitioners can pursue their arguments for a remand to state court").

[19] We have previously noted the problematic nature of appellate review of denials of remand. *See McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 416 (5th Cir. 2008) ("[I]f subject matter jurisdiction is . . . established and a case remains in the federal court system for a significant length of time or reaches a verdict on the merits, considerations of finality and economy may result in affirming a judgment [on appeal] despite the improper removal." (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75 (1996)).

1.    **Legal Standard**

i.    **Mandamus Standard**

A petitioner may show "that its right to issuance of the writ is 'clear and indisputable' by demonstrating that there has been a 'usurpation of judicial power' or a 'clear abuse of discretion.'"[20] In *In re Volkswagen*, we focused on "clear abuse of discretion" because we were reviewing a district court's denial of a motion to transfer venue that, on appeal, would have been subject to review for *mere*, not *clear*, abuse of discretion.[21] In the instant case, however, we consider a legal question — the district court's denial of Beazley's motion to remand — that, on appeal, we would review *de novo*.[22] Given this distinction, we may not here review for clear abuse of discretion; it is illogical to review under that standard a ruling on a legal issue for which the district court may not exercise discretion in the first place.[23] Even in a mandamus proceeding, we must review *de novo* the district court's interpretations of law.[24] Yet, mandamus remains an *extraordinary* remedy, and "[m]erely showing that the district court erred is

---

[20] *In re Volkswagen*, 545 F.3d 304, 311 (quoting *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 571 (5th Cir. 2006) (Dennis, J., concurring)).

[21] *See id.* at 309–10 (discussing clear abuse of discretion); *see also Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 631 (5th Cir. 2008) (reviewing, on appeal, for abuse of discretion a decision on a motion to transfer venue).

[22] *See Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1117 (5th Cir. 1998).

[23] Even though we distinguish between the possible standards of review, we "must be careful . . . [not] to be misled by labels such as 'abuse of discretion' and 'want of power' into interlocutory review of nonappealable orders on the mere ground that they may be erroneous." *In re Volkswagen*, 545 F.3d at 309 (*quoting Will v. United States*, 389 U.S. 90, 98 n.6 (1967)) (quotation marks omitted).

[24] *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (per curiam); *In re Am. Airlines, Inc.*, 972 F.2d 605, 609 (5th Cir. 1992); *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).

insufficient to obtain . . . relief."[25]  Accordingly, we shall grant relief only if Beazley demonstrates that the district court "clearly and indisputably erred."[26]

### ii.    Legal Standard:  Remand to State Court

Pursuant to 28 U.S.C. § 1447(c), a party may, within thirty days of removal of a case from state court, file a motion to remand the case on the basis of any defect other than lack of subject-matter jurisdiction.[27]  The purported defect in the instant case is that Beazley's consent was a necessary condition of removal, but was not sought when its then co-defendant GE HFS filed the notice of removal.  We have previously explained:

> All defendants who are properly joined and served must join in the removal petition, and . . . failure to do so renders the petition defective.  There is an exception to this general rule, however.  "Nominal" or "formal" parties need not join in the removal petition.  To establish that non-removing parties are nominal parties, the removing party must show . . . that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendants in state court.[28]

In determining whether a party is nominal, a court asks "whether, in the absence of the [party], the Court can enter a final judgment consistent with equity and good conscience, which would not be in any way unfair or

---

[25]  *In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003); *see also Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953) ("The supplementary review power conferred on the courts by Congress in the All Writs Act is meant to be used only in the exceptional case . . . .").

[26]  *In re Avantel*, 343 F.3d at 317 (stating that the petitioner "must show not only that the district court erred, but that it clearly and indisputably erred"); *In re Occidental Petrol. Corp.*, 217 F.3d 293, 295 (5th Cir. 2000) (same).

[27]  If the court lacks subject-matter jurisdiction at *any* time before final judgment, it must remand the case.  28 U.S.C. § 1447(c).  In the instant case, the district court indisputably has diversity jurisdiction irrespective of any error in removal *procedure*.  *See Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 423 (5th Cir. 1990) ("The failure of all the defendants to join in the removal petition is not a jurisdictional defect.").

[28]  *Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 871 (5th Cir. 1991) (internal quotation marks and citations omitted).

inequitable."[29] Additionally, a party is nominal if its role is restricted to that of a "depositary or stakeholder,"[30] e.g., one "who has possession of the funds which are the subject of litigation [and] . . . must often be joined purely as a means of facilitating collection."[31] The test is not dependant on how the plaintiff labels its complaint, but rather on the practical effect of a judgment on a given defendant.[32] Equity is the major concern in this inquiry.[33] "The question of whether a named defendant is a nominal party depends on the facts in each case."[34] And, we look to whether a party was nominal at the *time of removal* rather than considering any subsequent events.[35]

### 2.    Beazley Fails to Establish Clear and Indisputable Right to Relief

In the instant case, the district court held that GE HFS properly removed the case because Beazley was a nominal party — a mere depositary or stakeholder — at the time of removal. The court determined that only *after*

---

[29] *Louisiana v. Union Oil Co. of Calif.*, 458 F.3d 364, 366–67 (5th Cir. 2006) (quoting *Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 379 (5th Cir. 2006)) (quotation marks omitted); *see Farias*, 925 F.2d at 871 (quoting *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349, Int'l Printing Pressmen & Assistants' Union of N. Am.*, 427 F.2d 325, 327 (5th Cir. 1970)).

[30] *Union Oil Co.*, 458 F.3d at 367 (citing *Tri-Cities*, 427 F.2d at 327); *Tri-Cities*, 427 F.2d at 327 ("The test of whether or not a named defendant is a nominal party is if his role in the law suit is that of a depositary or stakeholder . . . ." (citation omitted)).

[31] *S.E.C. v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991); *see* BLACKS LAW DICTIONARY 1440 (8th ed. 2004) (A "stakeholder" is "[a] disinterested third party who holds money or property, the right to which is disputed between two or more other parties.").

[32] *See Union Oil Co.*, 458 F.3d at 367 ("We take practical considerations into account in making this determination.").

[33] *Farias*, 925 F.2d at 871.

[34] *Tri-Cities*, 427 F.2d at 327.

[35] *See, e.g.*, *In re Shell Oil Co.*, 932 F.2d 1518, 1522–23 (5th Cir. 1991).

removal did Beazley become a real party in interest. To support its conclusion, the district court relied on exchanges that occurred during the November 17, 2008 preliminary injunction hearing. Specifically, the court noted that "Beazley's counsel stated that 'Beazley is really not a part of this dispute' going on right now between the parties and that he 'believe[s] that Beazley is not a real party in interest; and therefore, . . . should not have been brought into the matter.'" The court also relied on counsel's statement:

> Clearly, the dispute between the hospital and GE [HFS] over the $2.1 million in receivable payments that were made and whatever financing agreement GE [HFS] has with the hospital on the pledge of receivables, . . . has nothing to do with us. We have no control over it. In fact, I don't have any knowledge of it except what we've heard here today.

Beazley contends that the district court misconstrued these statements or took them out of context. Beazley now urges the interpretation that these statements did not refer to its interest in the overall lawsuit, but rather to Beazley's interest in the portion of the dispute that was the focus of the preliminary injunction hearing — whether the amount of insurance proceeds due at that time was payable solely to the Hospital or whether GE HFS was to be a payee. On this issue, Beazley concedes it was a mere bystander. But, Beazley maintains that although it has no interest in *which party* receives the proceeds, it has always disputed the *amount* of proceeds that would be paid.[36] Perhaps more damaging, and less susceptible to mis-interpretation, than any of the statements cited by the district court, is a statement from a December 3, 2008 hearing. There, counsel for Beazley represented to the court that "We went to the mediation

---

[36] Counsel for Beazley asserts that the "going on right now" part of his statement "Beazley is really not a part of the dispute that's *going on right now*," demonstrates that he was only referring to which party should receive the insurance proceeds. More difficult to explain away, however, is the statement, "Beazley is not a real party in interest; and therefore, . . . should not have been brought into the matter."

because of the fact that we felt obligated to do so by Your Honor's direction. At the time of the oral presentation before the Court, . . . Beazley was almost a third party on my term — but it was suggested and ordered by the Court that we attend a mediation."[37] The Plaintiffs suggest that either these post-removal statements should be construed as a waiver of the argument that Beazley was a real party, or judicial estoppel should now bar the claim because GE HFS relied on pre-removal representations. In response to the waiver argument, Beazley directs us to its statement at the preliminary injunction hearing that it may later move to remand the case.

The district court also cited what it considered Beazley's representation that it had been paying the Hospital's business-interruption expenses and would continue to do so. Yet, Beazley, relying on, *inter alia*, a statement made on the day of removal that it was still adjusting the insurance claim, contends that the *amount* of its payments was never undisputed.

Beazley also directs us to the Hospital's original state court petition which sets forth an independent breach of contract claim against Beazley and alleges that it "has failed to timely make all payments required under the Policy." The original petition asserts that Beazley's breach caused the Hospital "substantial actual, consequential, and special losses." To this, the Plaintiffs respond by noting that the original petition did not allege that the amount due under the policy was at issue; instead the Plaintiffs contend that the original petition should be read as seeking relief only in the form of release of an *undisputed* amount of proceeds.

The Plaintiffs assert, and the district court apparently adopted, the argument that at the time of removal, Beazley appeared willing to issue a payment that the Plaintiffs considered to be appropriate under the policy and

---

[37] In that hearing, counsel for Beazley did, however, urge that it had overpaid on the Hospital's claim.

that only after removal did Beazley demonstrate an unwillingness to make business-interruption payments and contend that it had overpaid on the policy.[38] According to the Plaintiffs, they then filed their amended complaint alleging breach of contract based on these post-removal developments which had caused Beazley to become a real party.

Based on the foregoing discussion of the parties' positions and our *de novo* review, we are convinced that the district court did not err *clearly* and indisputably. The district court confronted what had quickly escalated into a fact-intensive inquiry into whether Beazley was a nominal party at the time of GE HFS's removal. The district court was convinced that, at that instant, Beazley had done nothing more than "hold the money bag" and await authoritative instructions regarding to whom the bag should be passed. The district court very well may have erred in making this determination, but our discussion confirms that any error made falls well short of the heightened *clear and indisputable* standard. Thus, the question of the district court's putative error is properly one for appeal, not mandamus.[39] Beyond our conclusion that Beazley has not established a clear and indisputable right to the issuance of the

---

[38] In the Plaintiffs' view, Beazley did not become a real party until November 17, when Beazley first asserted in court that it had overpaid on the policy.

[39] *See, e.g.*, *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) ("[Mandamus] may not appropriately be used merely as a substitute for the appeal procedure prescribed by . . . statute.").

The instant case is distinct from some other mandamus cases that, like this case, involve questions of law reviewed *de novo*. In those cases, the district court's error is unmistakably *clear and indisputable*. For example, a district court clearly and indisputably errs when it uses the incorrect legal test. *See In re Avantel, S.A.*, 343 F.3d 311, 318 (5th Cir. 2003) (assessing "whether the district court should have applied the control-group test or the subject-matter test" of attorney-client privilege); *see also In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992) (district court "erred in holding that its local rules . . . are the 'sole' authority governing a motion to disqualify"). In the instant case, however, the district court's application of the legal standard for motions to remand exhibits no such *clear and indisputable* error.

writ, we make no pronouncement one way or the other as to the correctness of the district court's ruling.

## C. Whether the Writ is Appropriate Under the Circumstances

When examined under the totality of the circumstances of the instant case, Beazley has failed to demonstrate that its right to the writ is so clear and indisputable that intervention is necessary. We are unpersuaded that mandamus would be appropriate.[40] As we said in *In re Volkswagen*, "writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case."[41] The discrete facts of this case, *viz.*, the distinct fact-intensive remand analysis that the district court conducted and which we reviewed *de novo*, establish that the issue presented here would be of minimal "importance beyond this case."[42]

## IV. Mediation Order

Beazley also contends that it is entitled to a writ of mandamus ordering the district court to vacate its order directing Beazley to mediate before Judge Isgur. According to Beazley, Judge Isgur violated a federal statute[43] and the Southern District of Texas's local rules[44] that prohibit the disclosure of

---

[40] *See In re Volkswagen*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (emphasizing that even if the other two requirements for relief are met, "'the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.'" (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004))).

[41] *Id.* at 319.

[42] *Cf. id.* at 319.

[43] *See* 28 U.S.C. § 652(d) ("[E]ach district court shall, by local rule . . . provide for the confidentiality of the alternative dispute resolution processes and to prohibit disclosure of confidential dispute resolution communications.").

[44] S.D. Tex. Local Rule 16.4I ("All communications made during ADR proceedings (other than communications concerning scheduling, a final agreement, or ADR provider fees) are confidential, are protected from disclosure, and may not be disclosed to anyone, including the Court, by the provider or the parties.").

communications made during mediation. Beazley specifically objects to Judge Isgur's statement that Beazley "did not negotiate in good faith." Beazley alleges that Judge Isgur's impartiality is questionable and that he should be disqualified from conducting further mediation in the instant case.[45] The Plaintiffs respond that Judge Isgur violated no rule because the rules protect only the confidentiality of "communications," of which Judge Isgur disclosed none. The Plaintiffs further urge that, under Beazley's interpretation, — in the absence of the parties' consent — a mediator would not even be permitted to report to the district court on the progress of mediation.

We cannot grant Beazley extraordinary relief on the basis it seeks. Beazley points to no precedent demonstrating that a court has ever granted a writ of mandamus to protect a petitioner's asserted right not to attend non-binding mediation. This is for good reason. We repeat, a writ of mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes";[46] and, there is nothing extraordinary about requiring Beazley to attend mediation at which it would control its own destiny, *viz*, any resolution would be voluntary. Additionally, even if Judge Isgur did err by making an unauthorized disclosure to the district court, his action was far from that which would compel drastic and extraordinary relief.

Beazley's petition on this ground is meritless, and we have no occasion to venture further into the applicable three-pronged mandamus analysis on this issue.

## V. CONCLUSION

---

[45] *See* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."); *id.* § 651(a) (indicating that mediation requires a "neutral third party"); *id.* § 653 (describing the process for selecting "neutrals").

[46] *Cheney*, 542 U.S. at 380 (internal quotation marks and citation omitted).

Beazley has not demonstrated a clear and indisputable right to the issuance of a writ of mandamus on either of the grounds it advances. We deny its petition and deny as moot its motion to stay.

MANDAMUS DENIED. STAY DENIED AS MOOT.